UNITED STATES *v.* RIVER ROUGE IMPROVEMENT COMPANY ET AL.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 3.   Argued March 10, 11, 1924.—Decided January 4, 1926.

1. An adjudication of a Circuit Court of Appeals final in its nature as to the general subject of the litigation may be reviewed by this Court, without awaiting the determination of a separate matter affecting only the parties to such particular controversy.   P. 413.
2. Under the provision of the Rivers and Harbors Act of July 18, 1918, directing that in proceedings to condemn lands in connection with any improvement of rivers, where a part only of any parcel is taken, the jury " shall take into consideration by way of reducing the amount of compensation or damages any special and direct benefit to the remainder arising from the improvement," an increase in value of such remainder, caused by its frontage on a river as widened and deepened by the improvement and the right of immediate access to and use of the improved stream, is such a " special and direct benefit," although the remaining portions of other riparian parcels would be similarly benefited.   P. 414.
3. In the absence of a controlling local law, the right of the owner of riparian property on a navigable river to have access from the front of his land to the navigable part of the stream, and, when not forbidden by public law, to construct landings, wharves or piers for this purpose, is a property right incident to his ownership of the bank, which, though subject to the absolute power of Congress over the improvement of navigable rivers, may not be arbitrarily destroyed or impaired by legislation having no real or

substantial relation to the control of navigation or appropriateness to that end. P. 418.

4. In view of the substantial character of this right, an instruction in a condemnation case giving the jury to understand that, in considering benefits to riparian land from a river improvement, the owner's right amounted to no more than a mere uncertain and contingent privilege of such access, etc., as the Government might see fit to allow him, was error. P. 417.

5. An error which relates, not merely to formal or technical matters, but to the substantial rights of the parties—especially when embodied in the charge to a jury—is ground for reversal unless it appears from the whole record that it was harmless and did not prejudice the rights of the complaining party. P. 421.

6. The Act of February 26, 1910, amending § 269 Jud. Code, did not alter this rule. *Id.*

285 Fed. 111, reversed.

ERROR to judgments of the Circuit Court of Appeals which affirmed judgments against the United States recovered in the District Court by owners of riparian land in a consolidated condemnation proceeding brought in aid of a river improvement.

*Solicitor General Beck* and *Mr. Alfred Lucking*, Special Assistant to the Attorney General, with whom *Mr. Howell Van Auken*, Special Assistant to the Attorney General, was on the brief, for the United States.

*Messrs. Selden Dickinson* and *Charles A. Wagner*, with whom *Messrs. Henry M. Campbell* and *Elliott G. Stevenson* were on the brief, for defendants in error.

*Mr. Paul B. Moody* filed a supplemental brief for defendants in error, Forman Company and Ramsby.

MR. JUSTICE SANFORD delivered the opinion of the Court.

Pursuant to an appropriation for the improvement of the Rouge River, Michigan, made in the Rivers and Har-

bors Act of August 8, 1917,[1] the United States filed in the
District Court for the Eastern District of Michigan five
petitions for the condemnation of numerous parcels of
riparian land needed for such improvement, and, also, of
a gas main passing underneath the river.[2]

The petitions were consolidated, and a jury trial had
resulting in seventy-three awards of compensation to the
property owners. Judgments were entered confirming all
these awards. Writs of error were sued out by the United
States to review the judgments as to fifteen of the awards
to riparian land owners and the award to the owner of
the gas main. These were heard by the Circuit Court of
Appeals as one case, and all the judgments were affirmed
except that awarding compensation to the owner of the
gas main, as to which a new trial was granted, 285 Fed.
111. This writ of error is brought to review the judgments
as to the awards thus affirmed, involving fifteen parcels
of land.

1. We are of opinion that, although a new trial was
granted as to the award to the owner of the gas main, the
judgment of the Circuit Court of Appeals as to the awards
to the riparian land owners, has such finality and com-
pleteness that it may be reviewed under this writ of error.
The controversy as to the gas main is entirely distinct

---

[1] 40 Stat. 250, 258, c. 49, § 1.

[2] The appropriation was made on condition that the " local inter-
ests " should donate the necessary land and settle all claims for dam-
ages. Act of 1917, *supra;* Ho. Doc. No. 2063, 64th Cong., 2nd Sess.,
pp. 5, 15. The " local interests " which had undertaken to secure
the necessary lands, were unable to obtain them by purchase; and,
at the request of the Secretary of War, condemnation proceedings
were instituted in the name of the United States. Act of May 16,
1906, c. 2465, 34 Stat. 196, as amended by the Act of June 29, 1906,
c. 3628, 34 Stat. 632. In order that the United States might be given
immediate possession and proceed with the work, the Ford Motor
Co., the principal " local interest," made a deposit to cover any
awards of compensation and damages that might be made. Act of
July 18, 1918, c. 155, 40 Stat. 904, 911.

from those as to the riparian lands; and its result can have no bearing whatever upon the awards to the land owners. While the general rule requires that a judgment of a federal court shall be final and complete before it may be reviewed on a writ of error or appeal, it is well settled that an adjudication final in its nature as to a matter distinct from the general subject of the litigation and affecting only the parties to the particular controversy, may be reviewed without awaiting the determination of the general litigation. *Williams* v. *Morgan,* 111 U. S. 684, 699; *Collins* v. *Miller,* 252 U. S. 364, 371; *Arnold* v. *Guimarin,* 263 U. S 427, 434. And so, conversely, an adjudication final in its nature as to the general subject of the litigation may be reviewed without awaiting the determination of a separate matter affecting only the parties to such particular controversy.

2. The principal matter here involved relates to the benefits to the land owners which were to be considered in reduction of their compensation and damages. The Rivers and Harbors Act of July 18, 1918,[2] contains a provision—whose validity is not questioned—that in all condemnation proceedings by the United States to acquire lands for the public use in connection with any improvement of rivers, where a part only of any parcel of land is taken, the jury " shall take into consideration by way of reducing the amount of compensation or damages any special and direct benefit to the remainder arising from the improvement." In each of the fifteen instances here involved the United States condemned only a portion of the parcel of land belonging to the riparian owner. It insists that there was error in the instructions to the jury in reference to the extent and measure of the benefits to the remainder.

The Rouge River, which empties into the Detroit River, had long been used for purposes of navigation, and various

---

[2] 40 Stat. 901, 911, c. 155, § 6.

industrial plants were located along its banks.   Although it had been somewhat improved by the United States prior to 1917, the channel was narrow, winding, comparatively shallow, and incapable of accommodating large freighters.   Under the terms of the Act of 1917 the new improvement was to be made in accordance with a plan recommended by the engineers of the War Department.[4] This contemplated straightening the channel of the river and widening and deepening it for about four miles above its mouth, so that it would accommodate the largest type of freighters on the Great Lakes and become, as was said, "practically a long slip serving for numerous docks and industries."   The bottom width of the new channel was to be 200 feet, the banks sloping to a top width of 290 feet between the harbor lines.   After its completion riparian owners desiring to construct docks were to be "required to locate the dock line or retaining wall" upon the harbor line, and excavate the bank "in front of the retaining wall or dock front" to the depth necessary to permit vessels to lie alongside.

The portions of the lands which were condemned were those lying within the limits of the widened channel or harbor lines.   The United States contended that the remaining portions of these parcels would receive special and direct benefits from the improvement by reason of fronting on the widened river and having direct access thereto for the building of docks and other purposes of navigation for which they had not been previously available.

We are of opinion that an increase in the value of the remaining portion of any parcel of land caused by its frontage on the widened river, carrying a right of immediate access to and use of the improved stream, would constitute a special and direct benefit within the meaning of the statute, as distinguished from a benefit common to

---

[4] Ho. Doc. No. 2063, Note 2, *supra*, pp. 10, 11.

all the lands in the vicinity, although the remaining portions of other riparian parcels would be similarly benefited. This is in accordance with the rule recognized by this court and established by the weight of authority in the state courts in reference to special benefits to lands abutting upon a new or widened street. *Bauman* v. *Ross,* 167 U. S. 548, 575; *Allen* v. *Charlestown,* 109 Mass. 243, 246; *Hilbourne* v. *Suffolk,* 120 Mass. 393, 394; *Cross* v. *Plymouth,* 125 Mass. 557, 558; *Abbott* v. *Cottage City,* 143 Mass. 521, 526; *Lewis* v. *Seattle,* 5 Wash. 741, 758; *Lowe* v. *Omaha,* 33 Neb. 587, 593; *St. Louis Railway* v. *Fowler,* 142 Mo. 670, 683; 2 Lewis' Eminent Domain, 3d ed., § 702, p. 1216. And see *Roberts* v. *Commissioners,* 21 Kans. 247, 252; *Trosper* v. *Commissioners,* 27 Kans. 391, 393. In *Allen* v. *Charlestown, supra,* 246, the rule is thus stated: " The benefit is not the less direct and special to the land of the petitioner, because other estates upon the same street are benefited in a similar manner. The kind of benefit, which is not allowed to be estimated for the purpose of such deduction, is that which comes from sharing in the common advantage and convenience of increased public facilities, and the general advance in value of real estate in the vicinity by reason thereof. . . . The advantages of more convenient access to the particular lot of land in question, and of having a front upon a more desirable avenue, are direct benefits to that lot, giving it increased value in itself. It may be the same, in greater or less degree, with each and every lot of land upon the same street. But such advantages are direct and special to each lot. They are in no proper sense common because there are several estates, or many even, that are similarly benefited."

But while the trial judge recognized the right of the United States to the deduction of such special benefits, if any, it insists that in charging the jury in reference to them he erroneously minimized their nature and extent.

In this portion of the charge the court stated, *inter alia,* that the Government had " the absolute power of control " over navigable streams, and the right to deprive any riparian owner of all access to the navigable portion of the stream and order the removal of any docks or other structures placed in the stream; that the deepening and widening of the channel would not confer on any riparian owner any property right to use the river for loading or unloading of vessels, this being " subject to the absolute power of control by the Government "; that the jury could not make any deduction of benefits on the theory that the improvement would increase any property right in connection with the access to or use of the river or bring the owner any new or different property right of access and use for purposes of navigation; that no benefit could be deducted unless the remainder of the land was rendered suitable for new or greater uses in navigation because of its new location " and because of a greater opportunity directly and specially to enjoy such use of the improved river as the Government may permit such owner to have; " and that the jury should keep " always in mind the uncertainty of securing from the Government the privilege to enjoy these advantages, and the limited character of whatever advantages may be so secured."

The United States not only excepted to these portions of the charge, but also requested that the jury be instructed, as bearing upon the existence and amount of the special benefits, that a riparian owner bordering on the new stream would have in respect thereto the usual rights of navigation pertinent to riparian property, that is, the right of access to the navigable part of the river in front of his property and the right to make a landing, dock or pier upon his harbor line, subject only to such general rules and regulations as the Government, in its power over navigation, might properly impose for the protection of the public right of navigation; that this

power of the Government " over navigation for the pro-
tection of public rights can not be arbitrarily and capri-
ciously exercised so as to destroy these riparian rights,
but must be exercised with reasonable relations to the
requirements of navigation"; and that, by the terms
of the plan of improvement, riparian owners whose lands
would border the new stream, were given the right or
privilege of constructing docks or retaining walls for their
use upon the harbor line, and to excavate the bank in
front thereof to the depth necessary to permit vessels to
lie alongside.    These requests were denied; and the
United States excepted.

We are of opinion that the giving of these instructions
and the refusal of these requests involved prejudicial
error.   It is well settled that in the absence of a controlling
local law otherwise limiting the rights of a riparian owner
upon a navigable river, *Shively* v. *Bowlby,* 152 U. S. 1,
40, he has, in addition to the rights common to the pub-
lic, a property right, incident to his ownership of the
bank, of access from the front of his land to the navigable
part of the stream, and when not forbidden by public law
may construct landings, wharves or piers for this pur-
pose.  *Dutton* v. *Strong,* 1 Black, 23, 31; *Railroad Co.* v.
*Schurmeir,* 7 Wall. 272, 289; *Yates* v. *Milwaukee,* 10 Wall.
497, 504; *Transportation Co.* v. *Parkersburg,* 107 U. S.
691, 699; *St. Louis* v. *Rutz,* 138 U. S. 226, 246; *Illinois
Central Railroad* v. *Illinois,* 146 U. S. 387, 445; *Weems
Steamboat Co.* v. *People's Co.,* 214 U. S. 345, 355;
*United States* v. *Chandler-Dunbar Co.,* 229 U. S. 53, 70.
There is no limitation upon this right of a riparian owner
in the laws of Michigan.   On the contrary it was recog-
nized in *Lorman* v. *Benson,* 8 Mich. 18, 25, that the rights
of riparian owners must be determined by the common law
so far as applicable to the local situation; and in *Ryan* v.
*Brown,* 18 Mich. 196, 210, it was said that: " If wharves
and similar conveniences were not allowed upon our large

streams, the shipping business would become practically worthless. It can never be unlawful for a land owner to make such wharves and landings as will accommodate all vessels ordinarily using the stream, unless there are some exceptional circumstances, as narrows, bends, or the like, which may in particular cases render his structure improper."

This right of a riparian owner, it is true, is subordinate to the public right of navigation, and subject to the general rules and regulations imposed for the protection of such public right. And it is of no avail against the exercise of the absolute power of Congress over the improvement of navigable rivers, but must suffer the consequences of the improvement of navigation, if Congress determines that its continuance is detrimental to the public interest in the navigation of the river. *United States* v. *Chandler-Dunbar Co., supra,* 62, 70.

The right of the United States in the navigable waters within the several States is, however, "limited to the control thereof for the purposes of navigation." *Port of Seattle* v. *Oregon Railroad,* 255 U. S. 56, 63. And while Congress, in the exercise of this power, may adopt, in its judgment, any means having some positive relation to the control of navigation and not otherwise inconsistent with the Constitution, *United States* v. *Chandler-Dunbar Co., supra,* 62, it may not arbitrarily destroy or impair the rights of riparian owners by legislation which has no real or substantial relation to the control of navigation or appropriateness to that end. In *Yates* v. *Milwaukee, supra,* 504, it was said in reference to the right of a riparian owner on a navigable stream: "This riparian right is property and is valuable, and though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired." This language was cited with approval in *Illinois Central Railroad* v. *Illinois, supra,* 445.

Considering the charge of the court in the light of these general principles, we find that it was permeated by the fundamental error, emphasized by the refusal of the requests, that the jury were left to determine the amount of the benefits to be deducted on the theory that a riparian owner on the improved river would have merely such uncertain and contingent " privileges " of access to the navigable stream and of constructing docks fronting on the harbor line, as the Government, in the exercise of an absolute control over the navigation of the river, might see fit to allow him, instead of being instructed that he would have a right to such access and the construction and maintenance of such docks until taken away by the Government in the due exercise of its power of control over navigation. And this error was the more serious since the plan of the improvement contemplated that the improved river should become a slip for docks and industries and recognized the right of a riparian owner to construct docks upon the harbor line; and there was nothing in the evidence indicating any probability that the Government would at any time abrogate or curtail this right in any respect.

The Circuit Court of Appeals, while stating that the trial court had over-emphasized the elements of uncertainty in the rights of riparian owners and the contingent character of these rights, was of opinion that, under all the circumstances, such over-emphasis was not sufficiently prejudicial to call for a reversal of the judgment. With this we cannot agree. The charge was not merely an over-emphasis of the contingent character of the rights of the riparian owners, but in substance an instruction that they had no rights in this respect, and could only obtain uncertain privileges, as a matter of grace. There is an essential difference between a substantial property right which may be enjoyed until taken away in the appropriate exercise of a paramount authority, and an uncertain and

contingent privilege which may not be allowed at all. The failure to observe this distinction went to the root of the charge in reference to the deduction of benefits. And its natural, if not inevitable, effect, was to lead the jury to a lower estimate of the benefits than would have been made under a proper charge.

The present case is not controlled by the provision of § 269 of the Judicial Code, as amended by the Act of February 26, 1919,[5] that in an appellate proceeding judgment shall be given after an examination of the entire record, "without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." We need not enter upon a discussion of the divergent views which have been expressed in various Circuit Courts of Appeals as to the effect of the Act of 1919. It suffices to say that since the passage of this Act, as well as before, an error which relates, not to merely formal or technical matters, but to the substantial rights of the parties—especially when embodied in the charge to a jury—is to be held a ground for reversal, unless it appears from the whole record that it was harmless and did not prejudice the rights of the complaining party. See *Yazoo Railroad* v. *Mullins,* 249 U. S. 531, 533; *Fillippon* v. *Albion Slate Co.,* 250 U. S. 76, 82. In the present case the error in the charge could not but mislead the jury in reference to a material element necessary for its consideration in determining the amounts of the awards; and it cannot be said from the whole record that the substantial rights of the United States were not prejudiced thereby. The judgments of the District Court should therefore have been reversed, and new trials granted.

3. It is unnecessary to set forth various errors assigned as to other rulings of the trial court. These matters were fully and carefully considered by the Circuit Court of

[5] 40 Stat. 1181, c. 48.

Appeals, and we are entirely satisfied with the conclusions which it reached in reference to them.

The judgments of the District Court and Circuit Court of Appeals are reversed, and the cause is remanded to the District Court for further proceedings in accordance with this opinion.

*Judgments reversed.*