UNITED STATES v. CENTRAL STOCKHOLDERS' CORPORATION OF VALLEJO et al.

SAME v. CHARLES S. HOWARD CO. et al.

Nos. C–86–J, C–87–J.

District Court, S. D. California, N. D.

Oct. 6, 1930.

J. F. Lawson and E. E. Danly, Sp. Assts. to Atty. Gen., and Samuel W. McNabb, U. S. Atty., and I. F. Parker, Asst. U. S. Atty., both of Los Angeles, Cal.

Athearn, Chandler & Farmer and Frank R. Devlin, all of San Francisco, Cal., for defendants Central Stockholders' Corporation and Charles S. Howard Co.

Roy V. Reppy and George E. Trowbridge, both of Los Angeles, Cal., and Edward F.

Treadwell, of San Francisco, Cal., for defendant Southern California Edison Co.

J. E. Woolley, of San Francisco, Cal., amicus curiæ, for Miller & Lux, Inc., and San Joaquin & Kings River Canal & Irrigation Co.

JAMES, District Judge.

Two suits, as above entitled, are brought on behalf of the United States to secure an adjudication of its claimed right, acting through licenses granted under the Federal Water Power Act (16 USCA §§ 791–823), to impound, upon land included within forest reserves in the Sierra Nevada Mountains in California, water for the purpose of operating plants to produce electricity for power and lighting.

Plaintiff seeks first an injunction restraining the defendants Stockholders' Corporation and Howard Company from further prosecuting actions separately brought by them against the Southern California Edison Company (plaintiff's licensee) in the superior court of the state of California and in the counties of Stanislaus and Merced, respectively. There is a prayer generally stated for a determination of the riparian right of the government in the water which is diverted, and as contemplated to be diverted, for power purposes.

The defendant corporations (except the Edison Company) have presented motions to dismiss the bills of complaint. As is obvious, the Edison Company is allied in interest with the United States. It is contended in brief, on behalf of the moving defendants, that, upon the facts asserted in the complaints, supplemented with those shown by affidavits, documentary evidence and matters of which this court will judicially notice, the United States is without interest in the subject-matter of the suits brought in the state court. A temporary injunction was stipulated for, pending decision on the motions to dismiss.

The defendant landowners have furnished copies of the complaints filed by them in the state court. In the Central Stockholders' case the Edison Company had made its answer, a copy of which is also before the court. In that answer the Edison Company makes claim on its own behalf to riparian rights as attached to land owned by it, and upon which some of its power plants and dams are built; it makes claim also to rights alleged to have accrued to it as licensee of the government; and finally by cross-complaint seeks to condemn interfering rights found to be possessed by the Central Stockholders' Corporation. In the Howard case the defendant Howard Company has filed a demurrer in the state court, but had not, as shown, reached the time where an answer was required of it when plaintiff sued.

At the hearing on the motions to dismiss, various public reports were called to the attention of the court, and a number of affidavits were submitted by the defendant landowning corporations, all having to do with the navigable possibilities of the San Joaquin river and the flow of water therein, and of the effects of different states of flow. Many of the matters shown may be classed as those of which the court is permitted to take notice without specific proof; some are illustrated in the affidavits referred to, and others are the stated assertions in the verified pleadings filed in the state court, in the actions which the government seeks to restrain. The government filed with its complaint a certified copy of the orders of the Federal Power Commission made in granting licenses for power sites to the Edison Company.

It will be well to give, for the better understanding of the questions involved, a summary of the facts which show the conditions affecting the several parties: The Sierra Nevada Mountains extend in a northwesterly and southeasterly direction along the easterly side of the state of California in the central portion thereof. Their western slopes furnish a watershed which turns the winter rains and melting snows into streams and courses which unite to form the San Joaquin river, which drains the central basin known as the San Joaquin Valley. This valley is of great extent, embracing more than ten counties, and is largely fertile. It is devoted to agriculture, fruit growing, and stock-raising, which pursuits are intensively developed. As is commonly known, the successful production of crops in California, both as to fruit and many of the annuals, depends upon irrigation.

The San Joaquin river has its origin in the Sierra Nevadas in the extreme easterly sections of the counties of Madera and Fresno. It travels first westerly until the foothills merge into the more level surface of the valley, and thence northwesterly across the counties of 'Merced, Stanislaus, and San Joaquin, finally emptying into the Bay of San Francisco. As the river proceeds northerly through the counties last mentioned, it receives contributions to its volume from numerous tributaries, notably from the Merced

river in Merced county, and the Stanislaus and Tuolumne rivers in Stanislaus county, all feeding from the western slopes of the Sierra Nevadas.

The lands of the Central Stockholders' Corporation lie in Stanislaus county, down the river from where the Merced and Tuolumne contribute their waters to the stream. These lands are located more than 100 miles from the place of location of the power projects established and provided to be undertaken by the Edison Company. The lands of the Charles S. Howard Company are in Merced county approximately 30 miles up stream from the Central Stockholders' lands.

The holdings of the Central Stockholders' Corporation include 3,735 acres of land, of which 1,375 acres were derived by patent from the United States and 2,360 acres were obtained by grants from the state of California as swamp and overflowed lands. This corporation asserts that of its holdings those lands which are riparian have frontage on the San Joaquin river of more than five miles. It asserts also that 700 acres of its lands are irrigated by overflow from the river as it has in the past flowed when not interfered with by the Edison Company's storage operations. The Howard Company asserts that 387 acres of its land borders directly upon the river; that 227 acres thereof were derived through grants of swamp and overflowed lands, and 160 by patent from the United States. The latter company further asserts that other of its land, all derived by patent from the United States, and to the extent of more than 5,000 acres, borders on sloughs which receive their water from the San Joaquin river; that Chamberlain slough is 20 miles long and 4 miles wide in part, and that the slough carries water from the river to the lands whenever the river is flowing 6,000 cubic feet per second at Friant, a point in Fresno county where the main stream of the river emerges from the mountains. All of the power projects, existing and proposed, are above Friant.

Briefly stated, the two land-owning companies allege that the establishing of the power plants of the Edison Company at the headwaters of the San Joaquin river, and the accompanying storage of water, prevents the flow of the river, during the period of rains and melting snow, from reaching a height sufficient to fill the sloughs and overflow their lands. That as a result they are deprived of a valuable right and have suffered great loss. In addition to the benefit alleged to be received by the lands in question through the wetting of their surface by overflow waters, each of the defendant landowning corporations set out in their complaints in the suits in the state court that the lands are also enriched by the silt brought onto it by the waters.

In view of the decision of the Supreme Court of the United States in the case of Henry Ford & Son, Inc., v. Little Falls Fibre Company, 280 U. S. 369, 50 S. Ct. 140, 142, 74 L. Ed. 483, which was decided on January 6, 1930, and after the motions here considered were argued, the question concerning the use of the San Joaquin river for navigation becomes, in my opinion, of small importance. It may be well, however, to briefly state the facts as to which there seems to be no dispute:

The tidal effect received by the San Joaquin river from the San Francisco Bay ends several miles below the confluence of the Stanislaus with the San Joaquin, and below the property of the corporations interested. There is some navigation as far as Hills Ferry in Merced county. Evidence furnished by an engineer is to the effect that, in order to make the river available for navigation above this point, it would be necessary that it carry at least 6,000 cubic feet per second; that the fact is that the releases from storage by the Edison Company never have exceeded 1,000 cubic feet per second, and do not ordinarily amount to 500 feet per second; that even though the use of water by upper appropriators were to cease, and the released water added to the stream, there would not be furnished enough for navigation without canalization. The latter method of developing the navigable possibilities to the river has not been proposed by the United States or the state of California. Thirty-five years ago the United States constructed some works in aid of navigation at Paradise Cut, below the land of the Central Stockholders' Corporation, but has not expended money upon it since that time. Ordinarily navigation stops at San Joaquin City, about 4 miles below the lands of the last-named company. Above San Joaquin City and as far as Hills Ferry, flat-bottomed boats of small draft operate during periods of high water only. Hills Ferry is at least 100 miles below any of the works, present or projected, of the Edison Company. No part of the streams within the government owned area can be made navigable, for the region is altogether mountainous and of high elevation. It will appear, then, that the United States is not performing work by its leased projects, di-

rectly upon a stream where it is navigable. Its lessee is making use of water upon a high and tributary source.

Above the lands of the defendant companies there are diversions of water from the San Joaquin, made by landowners of sufficient to irrigate approximately 500,000 acres of land. The Edison Company has regulated its releases of water from its storage dams in time past under definite contract conditions made with these landowners, designed to secure to the riparian owners and appropriators the supply to which they claim to be entitled. Counsel for the government say: "There have, indeed, been extensive diversions for irrigation from this river upon which large communities have come to depend. They are not imperiled by this litigation."

And it may be further remarked that it seems too plain to admit of any dispute that the interests of the agriculturalists, and all of those landowners who depend upon irrigation to produce their crops, are considered by the state and national government to be of greater importance than the furnishing of means of water transportation through the San Joaquin river. It will be noticed in this connection that there is rail transportation generally available in the San Joaquin Valley, as well as a great system of paved highways leading to different points of the State. The contention that the erection of storage dams in the mountains is, or was intended to be, in aid of navigation seems to be contradicted by the facts alleged and shown. Such dams, in the results of their operation, cannot, in the view I take of the case, have "real or substantial relation to the control of navigation." Wisconsin v. Illinois, 278 U. S. 367, 49 S. Ct. 163, 170, 73 L. Ed. 426; United States v. River Rouge Improvement Co., 269 U. S. 411, 46 S. Ct. 144, 70 L. Ed. 339; Seattle v. Oregon & W. R. Co., 255 U. S. 56, 41 S. Ct. 237, 65 L. Ed. 500.

If it be argued, on the other hand, that that issue is not so clear as to admit of being settled on the motions to dismiss, it must be then answered that the Water Power Act is definite and restrictive in its terms; that it does not attempt, if such it could do, to invest the Water and Power Commission with all the authority of the government to do things that may be done in the control and improvement of navigable streams; it declares, and licenses issued under it provide, in effect that, where the works erected under the authority of its provisions by licensees result in the damaging of rights in property,

the owners of such rights shall not be prevented from collecting damages. The Supreme Court of the United States, in Ford & Son v. Little Falls Fibre Company et al., supra, construed sections of the act pertinent here when it said: "While these sections are consistent with the recognition that state laws affecting the distribution or use of water in navigable waters and the rights derived from those laws may be subordinate to the power of the national government to regulate commerce upon them, they nevertheless so restrict the operation of the entire act that the powers conferred by it on the Commission do not extend to the impairment of the operation of those laws or to the extinguishment of rights acquired under them without remuneration. We think the interest here asserted by the respondents, so far as the laws of the state are concerned, is a vested right acquired under those laws and so is one expressly saved by section 27 [16 USCA § 821] from destruction or appropriation by licensees without compensation, and that it is one which petitioner, by acceptance of the license under the provisions of section 6 [16 USCA § 799], must be deemed to have agreed to recognize and protect."

There seems to be no real difference between opposing counsel that the law of the state controls as to rights of use in the waters within its border. Plainly, the United States can have no different nor superior right as a riparian proprietor to that assigned to private ownership.

If the use which the licensee of the United States is making of the waters of this state is not one recognized by the law as established in California as being properly riparian, then, regardless of other questions as to the government's interest at large in waters arising or flowing through its lands, plaintiff's bills would show no cause of action. The case of Herminghaus v. Southern California Edison Company, decided by the Supreme Court of California, 200 Cal. 81, 252 P. 607, 619, is relied upon by the defendant landowners. It involved claimed rights to the use of waters in the San Joaquin river for the precise purposes that the said defendants here assert, and as against the same Edison Company then operating a part of the same water power projects as are here involved. The Edison Company in that suit raised substantially all of the issues as they have been proposed here; that is, that the use made by it of the water in storage was within its right as against the lower riparian holder; also that it was the licensee of the government and

entitled to claim immunity from damages, as the work was in aid of navigation; also riparian rights in itself for such land as it held title to and upon which some of its power works were built. Counsel for the United States appeared in that case as amicus curiæ, supporting the appellant Edison Company. Many other counsel representing various irrigation and power interests also appeared. The decision was comprehensive in its review of the water law of the state. A petition for certiorari was dismissed by the Supreme Court of the United States on the ground that no federal question was involved (275 U. S. 486, 48 S. Ct. 27, 72 L. Ed. 387). The Supreme Court of California in the Herminghaus Case held that the storage of water for power purposes by the Edison Company in the manner there shown (the same as that here described) was not a use that could be employed to the detriment of a lower riparian owner who claimed rights to the same uses as those which the land-owning defendants here assert. And the court said: "* * * The defendants frankly admit that their proposed plans for the storage of the waters of said river in its vast system of reservoirs hold in contemplation the retirement of said· waters for long and indefinite periods of time, in fact, admit that as to certain of said reservoirs, the sequestration of the portion of the said waters stored therein will be cyclic, and as to said waters as a whole and to the extent of their retention in said reservoirs, their ultimate return to the river would depend, not at all upon the claims and asserted rights of lower riparian owners to the usual, natural, and ordinary flow of said waters, but altogether upon the will and convenience of the defendants in their proposed utilization of said waters for power production."

The law, as stated in the Herminghaus decision, is affirmed in a later case decided by the California Supreme Court. Seneca Consolidated Gold Mines Company v. Great Western Power Company, 287 P. 93, 97. In the decision made in the case last noted, the court quoted with approval from the case of Clinton v. Myers, 46 N. Y. 511, 7 Am. Rep. 373, as follows: "A party has a right to erect a dam across a stream upon his land, * * * and if, in seasons of drought, it becomes inadequate for that purpose, he may detain the waters for such a reasonable time, as may be necessary to raise the requisite head to enable him to use it advantageously and profitably upon such machinery. He has no right to erect machinery, requiring for its propulsion more water than the stream furnishes at its ordinary stages, and operate such machinery by accumulating the water and discharging it upon those below in unusual quantities to their prejudice. Nor has he a right to create a reservoir, and detain and store the water therein for future use in a dry season."

That a right riparian attaches as well to swamp and overflow lands as to those of different character is affirmed by the Herminghaus decision, and there is to be found in this case no matter respecting the relation and corresponding rights as between the parties litigant touching the use of the water involved that was not fully considered and determined by the California Supreme Court.

A number of other questions were presented and argued exhaustively in the briefs, which to me do not seem to affect the broad merits of the case as they now present themselves upon the admitted facts. The case of Ford & Son v. Little Falls Fibre Company, supra, cleared away much of the dispute as to the law involved touching the liability of persons or corporations holding licenses issued under the Federal Water Power Act. The claim of the United States is that it is entitled to have determined by the federal courts its right, through its licensees, to store for power purposes waters tributary to the San Joaquin river in a manner which the courts of the state of California conclusively determined no riparian owner has the right to do.

The Edison Company, serving a public utility, is given full power under the California law to condemn, by suit, property necessary to the carrying on of its business. In such a suit the damages which it is required to pay will be fixed. Thus it is that the power projects under government licenses may be fully carried out.

The motions to dismiss are granted. Decree accordingly.