UNITED STATES of America,
Appellant,

v.

FORT SMITH RIVER DEVELOPMENT
CORPORATION et al., Appellees.

No. 17876.

United States Court of Appeals
Eighth Circuit.

Aug. 3, 1965.

Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., made argument for appellant and filed brief with Ramsey Clark, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Charles M. Conway, U. S. Atty., Fort Smith, Ark., and Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C.

Thomas Harper, Fort Smith, Ark., made argument for appellee and filed brief.

Before VOGEL, RIDGE and MEHAFFY, Circuit Judges.

RIDGE, Circuit Judge.

This is an appeal from a judgment entered in a condemnation proceeding duly commenced pursuant to the Fifth Amendment to the Constitution of the United States, under authority of the "River and Harbor Improvement Act," (Chap. 12 Title 33, U.S.C.A.) the "Flood Control Act," (Chap. 15, Title 33, U.S.C.A.) and other applicable Acts of the Congress. Trial of the issue of damages was before the Court below, sitting without a jury. Compensation in the amount of $21,246.00, plus interest from the date of taking, was allowed for a perpetual easement over a part of "Morris Island" lying in the Arkansas River, within the city limits of Fort Smith, Arkansas. The opinion of the District Court so adjudicating is reported at 230 F.Supp. 973.[1]

"Morris Island" is approximately one and one-half miles long. Prior to the date of "taking", it contained about 160 acres of land. It lies adjacent to the right, or east, bank of the Arkansas River, at a point where the river runs north and south through Fort Smith, Arkansas. The easement condemned included all the area of "Morris Island" riverward, from a line running the entire length thereof. The taking was approximately 97 acres, leaving a remainder of approximately 63 acres. On the land side of "Morris Island" there was a slough or shallow waterway which enters the river near the south end thereof.[2] Access to "Morris Island" is over a public road which crosses the slough on a causeway or low water bridge.

The Court below found the partial taking of land here to be related to "general work of bank stabilization, channel rectification, control of floods, and the improvement of navigation on the Arkansas River." As a part of such project, it found a trench 8,400 feet long was cut through "Morris Island" of such depth and width as to enable the construction of a rock revetment, which was done "in an effort to stabilize the right or east bank of the river * * *." As a consequence, 36.86 acres of the easement area, riverward, was left to the ravages of the river current. After the casting thereof into the river, there were approximately 60.49 acres of the easement area remaining, which, of course, included the area upon which the revetment was built. The remaining land in the easement was variously stated to be 250 to 300 feet wide, which lies adjacent to the remainder containing approximately 62.36 acres. The taking was "subject * * * to existing easements for public roads and highways, public utilities, railroads and pipelines; reserving to the landowners, their heirs, executors, administrators, successors, and assigns, the right to use the surface of (the easement) land as access to their adjoining land." (Par. added.)

At the trial of this case, the Government took the position that this "river stabilization" work conferred a "special and direct" benefit upon the land remaining in "Morris Island"; thus making it more adaptable for industrial use by reason of the "project"; which, it asserted, increased the value of the remainder so that it was worth more after the taking than the value of the whole of "Morris Island" before that event.

Only one expert witness testified for each of the parties as to land values in this case. The Government's expert witness testified that prior to the taking here the highest and best use of all the land in "Morris Island" was for "agriculture", with a market value of $12,000.00, which was $500.00 less than appellant

1. Quotations in this opinion not otherwise identified are to be found in the opinion of the District Court, supra.

2. From the record before us, doubt exists as to whether "Morris Island" is and was in fact an island at the time of taking. (cf.) Crow v. Johnston, 209 Ark. 1053, 194 S.W.2d 193, 197; Jones v. C. B. & Q. R. R. (Mo.App.) 100 S.W.2d 617, and cases there cited.

had paid therefor at the time of purchase in 1957.[3] Because of the project here considered, it was that witness's opinion that the highest and best use of the remainder was "industrial". On the other hand, appellees' evidence of highest and best use before and after the taking "was for agricultural purposes and the gain it had already sustained by it lying within its proximity to the manufacturing district of Fort Smith, as well as it being zoned I–3 Industrial Zone." Hence, appellees' expert witness as to value excluded the "project" of "bank stabilization, channel rectification, control of floods and navigation on the Arkansas River" entirely from his estimate of before and after values.

From the opinion of the District Court, it is apparent that it considered "the general work of bank stabilization, channel rectification, control of floods and for improvement of navigation of the Arkansas River * * *" to be the cause and purpose for the taking here, but when it came to consider the question of general or special benefits to the remainder it limited its consideration thereof, singularly, to "navigation on the Arkansas River," and from that vista ruled that such was the sole objective of the project and cause for the "partial condemnation" of "Morris Island." From that limited view of the proof adduced, it found "the benefit, if any, to the remaining land" to be "a general benefit" arising "from the fulfillment of (a) public project," which was general to all riparian land on the Arkansas River, particularly in and near Fort Smith, Arkansas. As a consequence, it concluded that "no special or direct benefit arose from the relation of the land in question to (this) public improvement," and such appears to be the singular premise for allowance of damages as it did in this partial condemnation proceeding.

Generally stated, it is the Government's contention that "the district court, in ascertaining compensation" as it did in this "partial taking case, erred in rejecting enhancement to the remainder due to the project." Its argument before us is premised thus:

"In the instant case, even though the owners would have received no award according to the testimony of the Government's expert witness, they are now in a better position financially than they would have been had there been no project. To pay them the value of the land taken, plus so-called severance damages calculated on an artificial basis, in addition to the benefits they have received, is far more than just compensation, unfair to the public and, hence, to be avoided." (Applnt's br., pp. 10–11.)

It is clear from the opinion of the District Court, ante, that it only considered the testimony of the witnesses for both parties from the vista that they were in agreement "that the highest and best use for the land at the time of taking was for agricultural purposes." (l. c. 984 of 230 F.Supp. ante.) The only inference to be made from the record is that it declared as a matter of law from that premise that "no special or direct benefit arose from the relation of the land in question to the public improvement" as made in the "Declaration of Taking" and "since the remainder of the land (did) not receive any special * * * benefits" it determined "the amount of compensation to be awarded to the landowner" as it did. In so doing, we believe that Court inadvertently misconceived the issues as raised and joined in this partial condemnation proceeding.

From the facts appearing in the record, doubt cannot exist as to the *causa causans* for the commencement of this partial condemnation proceeding. As the District Court specifically found, the purpose thereof was "general work of bank stabilization, channel rectification, control of floods, and for the improvement of navigation on the Arkansas

3. The lesser value was arrived at "because from investigation" the Government's appraiser was of the opinion "Morris Island * * * had more land at the time of purchase than it contained at the time of taking."

River." (ante, l. c. 975, of 230 F.Supp.) As a consequence, we think the mandate of § 595, of Title 33, U.S.C.A., is and was at the time of the taking here considered, particularly applicable to the facts established by all the proof adduced in the case at bar. (cf.) United States v. Mills, (8 Cir. 1956) 237 F.2d 401, and authorities there cited. In proceedings to condemn riparian land under the River and Harbor Improvements Act, and the Flood Control Act, supra, Congress has specifically declared that the trier of the facts, in "awarding the just compensation or assessing the damages to the owner" for property taken thereunder, "shall take into consideration by way of reducing the amount of compensation or damages any special and direct benefits to the remainder arising from the improvement." Such statute, of course, does not affect the Fifth Amendment constitutional norms considered in relation to the issue of a "taking", nor assessment of severance damages in partial condemnation proceedings as defined in United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943); Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L. Ed. 1236 (1934); and United States v. River Rouge Co., 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339; or Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270 (1897). But it does constitute a mandate by the Congress that in each such case the Court in which any such condemnation proceeding is pending shall specifically consider the issue of "special and direct benefits to the remainder arising from the improvement, and shall render (its) award or verdict accordingly." (Par. added.) Hence, in a partial condemnation proceeding, the trial court should have made specific findings of fact in respect to severance damage considered in the light of the object for the taking. Here, the District Court only considered the issue of severance damage from the general vista of "navigation on the Arkansas River." It made no findings of fact as to "special benefits," if any, arising from a consideration of "bank stabilization, channel rectification, control of floods."

It was the Government's contention in this case that the project of construction of a "revetment on (the) land" in question "which prevents the river from washing it away * * * has converted" the remainder "suitable for a more valuable use, i. e. industrial" than it had before, and that failure of the District Court to consider the taking from that aspect has caused the issue of damages to be wrongfully decided. In opposition thereto, appellees contended that there is nothing anywhere in the record of this case tending to show any special benefits accruing to the land remaining; that all which does appear is "general benefits that * * * might accrue to property of (the) nature" of Morris Island, because of general improvement of the Arkansas River. This, we think, completely overlooks all the issues present in the case, as well as the testimony in the record to the effect that before the taking, Morris Island was subject to reliction or erosion, and because thereof a part of it had washed away by reason of "current" reaction of the Arkansas River since appellees purchased the same to the date of this taking. The only inference to be made from the record is that the "revetment work" performed by the Government has manifestly, within the ambit of the Government's cause for a partial taking thereof, closed Morris Island, "riverward", from further reliction or erosion. That fact alone apparently places the easement, as well as the remainder of Morris Island, in a "better position" because of the taking here, than it was before, located and joined as the remainder is, within the industrial zone area of Forth Smith, Arkansas. Hence, it is apparent there was a factual issue in this case as to "highest and best" use by reason of this "project", which the Court below apparently did not consider and adjudicate from all the evidence adduced before it.

In this case, the testimony of the Government's witness was to the effect that by reason of the "project" the highest

and best use of "Morris Island" was changed from "agricultural" to an "industrial" use. The testimony of appellees' own witness was to the effect: "I consider the highest and best use of this property at the date of taking to be for agricultural purposes *and for urban growth* as the need for this acreage could be placed in the hands of investors, such as the present owners, *for the expansion and growth of industry* zone in which the property is located."

"Q. Is the property adaptable for industrial use? A. Yes, it is."

In the light of the foregoing, we do not consider the finding of fact as made by the Court below, that "both witnesses agree that the highest and best use for the land at the time of taking was for agricultural purposes" *only*, can be sustained, nor as being factually decisive of the issue of damages here. Such finding does not reflect the whole content of all the testimony adduced as to "highest and best use" as established in the record.

■ It was from a limited consideration of the facts existing at the date of taking, that the Court below estimated damages in the case at bar. That the owner of property condemned for public use is to be put in as good position pecuniarily as he would have occupied if his property had not been taken, is axiomatic in the law of condemnation. As said in United States v. Miller, supra:

"Since the owner is to receive no more than indemnity for his loss, his award cannot be enhanced by any gain to the taker. Thus although the market value of the property is to be fixed with due consideration of all its available uses, its special value to the condemnor as distinguished from others who may or may not possess the power to condemn, must be excluded as an element of market value." (317 U.S., l. c. 375, 63 S.Ct. l. c. 280.)

■ In the case at bar the Court below limited its consideration of the issue of "special benefit" as a "project to im-

prove navigation on the Arkansas River," and disregarded any "special benefits" to the land here considered arising from "bank stabilization, channel rectification * * * and control of floods." It is apparent that those three factors were vital matter at issue in this case. The taking * * * presupposed a *stable* bank for Morris Island; that the channel of the river would be controlled by such project; and that the revetment work would so control the "channel" of the Arkansas River that "Morris Island" would be protected from the ravages thereof. Such was the theory of the Government's proof as to specific benefits made in the case at bar, but not considered by the Court below in arriving at the quantum of damages as it did. That such matters present mixed questions of fact and law is clear. The commitment of the project, of course, was also to "navigation", but not singularly so. The taking of riparian rights to property, which only has the aspects of "bank stabilization, channel rectification and control of floods," reserving to the owner of the remainder "access" over the easement taken to his former riparian interest, can only be considered as being "direct", i. e. special to the riparian interest before and after the taking. (cf.) United States v. River Rouge Co., supra.

The Declaration of Taking in this case was for "public use" of land "necessary for use in connection with bank stabilization, channel rectification, control of floods, and navigation on the Arkansas River in Sebastian County, Arkansas." All four of such factors were the purpose of construction of the revetment work on the island for which the "easement" was sought. Clearly, the District Court erred in confining its consideration of benefits as it did, solely to one factor, namely, "navigation". To the extent that the "easement" rights protect the remainder of "Morris Island" and the latter is "fast land," evidence of "industrial use" value at time of taking is not unreasonable. (cf.) Olson v. United States, supra. As recently said by this Court: "It is settled that special benefits do not become

general merely because other lands in the area (of the taking) are similarly benefited." United States v. Crance, et al., 8 Cir., 341 F.2d 161, l. c. 167.

The judgment appealed from is reversed and the cause is remanded to the District Court for further proceedings in accordance with this opinion.