# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 15, 2019 Session

## HALLYSAH IBSEN AS ADMINSTRATOR OF THE ESTATE OF ELAINE KELLY, AND ROBERT KELLY v. SUMMIT VIEW OF FARRAGUT, LLC, ET AL.

### Appeal from the Circuit Court for Knox County
### No. 2-523-15      William T. Ailor, Judge

_____

### No. E2018-01249-COA-R3-CV

_____

In this healthcare liability action, the defendants filed a motion for a qualified protective order allowing them to conduct ex parte interviews with some of the plaintiffs' treating healthcare providers pursuant to Tenn. Code Ann. § 29-26-121(f). After the trial court granted the qualified protective order allowing the interviews, plaintiffs' counsel wrote a letter to plaintiffs' treating providers concerning the interviews. The defendants then filed a joint motion for sanctions asserting that the letters sent by plaintiffs' counsel violated the trial court's order by attempting to prevent the treating providers from participating in the interviews. The trial court granted monetary sanctions against the plaintiffs and their counsel and ordered plaintiffs' counsel to send retraction letters to plaintiffs' treating providers. The plaintiffs appeal. We have determined that the order on appeal is not a final order and, therefore, dismiss the appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and THOMAS R. FRIERSON, II, JJ., joined.

Linn M. Guerrero-Justice, Knoxville, Tennessee, for the appellants, Hallysah Ibsen and Robert Kelly.

Leslie Tentler Ridings and Meredith Bates Humbert, Kingsport, Tennessee, for the appellees, Summit View Health Management, Inc., and Summit View of Farragut, LLC.

Edward Gibson White, II, Barton Chandler Williams, and Benjamin Chase Kibler, Knoxville, Tennessee, for the appellee, Nancy Luongo Witherspoon.

Jamie Ballinger, Knoxville, Tennessee, for the appellee, Mary A. Hammonds.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

The administrator of the estate of Elaine Kelly and Ms. Kelly's husband, Robert Kelly, filed suit in 2015 against Summit View of Farragut, LLC, a nursing home, and other healthcare defendants asserting multiple causes of action including healthcare liability, wrongful death, negligence, fraud, and claims under the Tennessee Adult Protection Act, Tenn. Code Ann. §§ 71-6-101–126. On January 26, 2017, the defendants filed a joint motion for a qualified protective order allowing them to conduct ex parte interviews with a list of Ms. Kelly's treating healthcare providers pursuant to Tenn. Code Ann. § 29-26-121(f).[1] The plaintiffs objected on the grounds that Tenn. Code Ann. § 29-26-121(f) was unconstitutional and preempted by HIPAA, the Health Insurance Portability and Accountability Act, as well as on the ground that the proposed order was too broad under the statute. The State of Tennessee, through the Office of the Attorney General, moved to intervene to defend the constitutionality of Tenn. Code Ann. § 29-26-121(f), and the trial court granted the motion to intervene on August 15, 2017.

The trial court entered a qualified protective order on September 19, 2017, allowing ex parte interviews with Ms. Kelly's treating healthcare providers. The order includes the following language:

---

[1] Tennessee Code Annotated Section 29-26-121(f)(1) provides:

Upon the filing of any "healthcare liability action," as defined in § 29-26-101, the named defendant or defendants may petition the court for a qualified protective order allowing the defendant or defendants and their attorneys the right to obtain protected health information during interviews, outside the presence of claimant or claimant's counsel, with the relevant patient's treating "healthcare providers," as defined by § 29-26-101. Such petition shall be granted under the following conditions:

(A) The petition must identify the treating healthcare provider or providers for whom the defendant or defendants seek a qualified protective order to conduct an interview;

(B) The claimant may file an objection seeking to limit or prohibit the defendant or defendants or the defendant's or defendants' counsel from conducting the interviews, which may be granted only upon good cause shown that a treating healthcare provider does not possess relevant information as defined by the Tennessee Rules of Civil Procedure; and

(C)(i) The qualified protective order shall expressly limit the dissemination of any protected health information to the litigation pending before the court and require the defendant or defendants who conducted the interview to return to the healthcare provider or destroy any protected health information obtained in the course of any such interview, including all copies, at the end of the litigation;

(ii) The qualified protective order shall expressly provide that participation in any such interview by a treating healthcare provider is voluntary.

The participation of Elaine Kelly's prior treating medical providers in the interviews conducted pursuant to this Order is voluntary. Nothing in this order shall be construed as compelling the prior treating medical providers to speak to any party in an *ex parte* interview.

At the September 19, 2017 hearing, the trial court made the following admonition to plaintiffs' counsel:

Mr. Justice, I will tell you that my practice in this Court is that [the order] does not preclude you from contacting the doctors and explaining to them that this order is voluntary. But it will not give you the ability to contact them and tell them not to participate. All right. So that doesn't give you the ability to interfere with the Defendants' rights to conduct these interviews, but you can contact them and make sure that they understand that this is volunt[ary].

On November 9, 2017, the trial court entered an order in which it concluded that "Tenn. Code Ann. § 29-26-121(f) is constitutional and not preempted by HIPAA." The court found that the statute did not violate the separation of powers doctrine.

The defendants filed a joint motion for sanctions on October 24, 2017, asserting that six letters sent by plaintiffs' counsel to Ms. Kelly's treating healthcare providers "violated the Court's [September 19, 2017] order by attempting to keep the health care providers from taking part in the interviews." The defendants provided copies of the letters to the trial court.[2] The plaintiffs argued that the defendants sought to sanction the exercise of fundamental free speech rights.

In an order entered on January 3, 2018, the trial court found that the letters sent to Ms. Kelly's treating healthcare providers violated the court's order of September 19, 2017, and were "coercive, inflammatory, and improper." The court imposed the following sanctions: the plaintiffs and/or their counsel were to pay all costs and expenses, including attorney fees, incurred by the defendants in preparing for the joint motion and hearing and in contacting and deposing the treating healthcare providers identified in the motion for a qualified protective order. The court also ordered the plaintiffs' counsel to send a retraction letter to all of the treating healthcare providers he

---

[2] Some of the portions of the letters quoted by the defendants in their motion include the following:

- "WE BELIEVE IF YOU GRANT THIS INTERVIEW YOU WILL VIOLATE HIPAA AND THE COVENANT OF CONFIDENTIALITY YOU OWE TO YOUR PATIENT AND HER ESTATE."
- "If you violate HIPAA, we believe no Tennessee Court Order can excuse such a violation . . . ."
- "I urge you in the strongest terms possible not to do so [participate in the interview]."
- Reference to the possibility of "pursuing legal remedies against you for an illegal interview."

had contacted "explaining that his September 19, 2017 letter was improper, incorrect and in violation of Court Order." The trial court further warned that "any further interference with the Defendant[s'] discovery rights, including the right to interview treating healthcare providers, shall result in dismissal of this case."

On January 18, 2018, the plaintiffs filed a motion to alter or amend the order granting the defendants' joint motion for sanctions. The trial court denied the plaintiffs' motion to alter or amend on June 8, 2018.

The plaintiffs appeal and raise a number of issues, which we summarize as follows:

> (1) Whether the trial court erred in sanctioning the plaintiffs for violating its September 19, 2017 order prohibiting interference with the defendants' right to conduct ex parte interviews pursuant to Tenn. Code Ann. § 29-26-121(f).

> (2) Whether the trial court erred in concluding that Tenn. Code Ann. § 29-26-121(f) is constitutional.[3]

> (3) Whether the trial court erred in concluding that Tenn. Code Ann. § 29-26-121(f) is not preempted by HIPAA.

> (4) Whether the disposition of this appeal should be stayed pending the issuance by the Tennessee Supreme Court of its decision in *Willeford v. Klepper*, No. M2016-01491-SC-R11-CV.

The defendants argue that this appeal should be dismissed due to the plaintiffs' failure to comply with the Tennessee Rules of Appellate Procedure.

ANALYSIS

Prior to the filing of briefs in this appeal, the defendants filed a motion to dismiss the appeal based upon the plaintiffs' failure to comply with the Tennessee Rules of Civil Procedure. This Court denied the motion "without prejudice to the ability of the parties to raise and argue the jurisdictional issue discussed in the motion in their respective briefs." For the reasons discussed below, we have determined that the jurisdictional issue is dispositive in this appeal.

---

[3] We note that, with respect to the constitutional issues raised, the appellants failed to notify the Attorney General of this appeal as required by Tenn. R. Civ. P. 24.04. The trial court permitted the Attorney General to cease participating in the case once the court had determined that the statute was constitutional.

The plaintiffs filed their appeal pursuant to Tenn. R. App. P. 3, which provides, in part, as follows:

> In civil actions every *final judgment* entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action*, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable* and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

Tenn. R. App. P. 3(a) (emphasis added). Under Tenn. R. App. P. 3(a), an order that does not adjudicate all of the claims between all of the parties is "subject to revision at any time before entry of a final judgment" and is not appealable as of right. As our Supreme Court has stated, "[a] final judgment therefore is one that resolves all of the parties' claims and leaves the court with nothing to adjudicate." *Ball v. McDowell*, 288 S.W.3d 833, 836-37 (Tenn. 2009); *see also In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) ("A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'") (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)).

In their notice of appeal, the plaintiffs state that they appeal from the trial court's January 3, 2018 order granting sanctions and its June 8, 2018 order denying the plaintiffs' motion to alter or amend the January 3, 2018 order. We will focus on the January 3, 2018 order as it is the substantive order at issue. That order did not resolve all of the parties' claims, leaving nothing else for the trial court to adjudicate. Rather, the order imposed sanctions for the plaintiffs' failure to comply with the trial court's previous qualified protective order allowing the defendants to conduct ex parte interviews with some of Ms. Kelly's treating healthcare providers. The claims asserted in the plaintiffs' complaint remain unresolved. Thus, the January 3, 2018 order does not constitute a final judgment appealable under Tenn. R. App. P. 3.

The plaintiffs assert that their appeal is proper because the January 3, 2018 order imposes penalties that necessitate a finding of criminal contempt. If the January 3, 2018 order were a contempt order, the plaintiffs' appeal would be proper under Tenn. R. App. P. 3.[4] We conclude, however, that the plaintiffs' analysis on this issue is flawed.

---

[4] As our Supreme Court has stated, "a contempt proceeding is sui generis and is considered incidental to the case out of which it arises, and often stems from an underlying proceeding that is not complete." *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003). Thus, "[a] judgment of contempt fixing punishment is a final judgment from which an appeal will lie." *Hall v. Hall*, 772 S.W.2d 432, 436 (Tenn. Ct. App. 1989) (citing *State v. Green*, 689 S.W.2d 189, 190 (Tenn. Crim. App. 1984)).

According to the plaintiffs, the order imposes monetary sanctions and "coerced speech" (referencing the requirement that plaintiffs' counsel write a letter of retraction) and punishes them for violating a court order outside the presence of the court, thereby implicating the procedural requirements of Tenn. R. Crim. P. 42(b), which applies to criminal contempt proceedings.

As the plaintiffs point out, trial courts may use criminal contempt when a party or attorney fails to comply with the court's order. *Sanders v. Sanders*, No. 01A01-9601-GS-00021, 1997 WL 15228, at *2 (Tenn. Ct. App. Jan. 17, 1997). Unlike civil contempt (the purpose of which is to benefit a litigant), criminal contempt is intended "to restore the dignity and authority of the court" and as "punishment for failing to comply with a court's order." *Id.* As in the cases cited by the plaintiffs, the usual punishment for criminal contempt is "confinement for a definite term." *Id.*; *see also Storey v. Storey*; 835 S.W.2d 593, 599 (Tenn. Ct. App. 1992); *Crabtree v. Crabtree*, 716 S.W.2d 923, 924-25 (Tenn. Ct. App. 1986).

These characteristics of contempt orders do not describe the January 3, 2018 order at issue. In the January 3, 2018 order, the trial court stated that "any further interference with the Defendants' *discovery rights,* including the right to interview treating healthcare providers, shall result in dismissal of this case." (Emphasis added). Thus, the trial court expressly referred to the order as one governing discovery rights. With the passage of Tenn. Code Ann. § 29-26-121(f), the legislature authorized ex parte interviews, an informal method of discovery.[5] Moreover, this Court has held that Tenn. Code Ann. § 29-26-121(f) is not preempted by the Health Insurance Portability and Accountability Act (HIPAA). *Caldwell v. Baptist Mem'l Hosp.*, No. W2015-01076-COA-R10-CV, 2016 WL 3226431, at *8 (Tenn. Ct. App. June 3, 2016).[6] And, unlike a contempt order, the

---

[5] The formal discovery methods addressed by the Tennessee Rules of Civil Procedure do not include ex parte interviews. TENN. R. CIV. P. 26.01. Prior to the enactment of Tenn. Code Ann. § 29-26-121(f), our Supreme Court held that ex parte communications between defense attorneys and non-party treating physicians violated the implied covenant of confidentiality between physicians and patients. *Alsip v. Johnson City Med. Ctr.*, 197 S.W.3d 722, 723-24 (Tenn. 2006).

[6] Courts in other states have discussed the policy considerations supporting ex parte interviews:

> Restricting parties to formal methods of discovery would not aid in the search for truth, and it would only serve to complicate trial preparation. . . . As recognized by other jurisdictions, "such informal methods are to be encouraged, for they facilitate early evaluation and settlement of cases, with a resulting decrease in litigation costs, and represent further the wise application of judicial resources." *Trans-World Investments v. Drobny,* 554 P.2d 1148, 1152 (Alaska, 1976). There is no justification for requiring costly depositions, for example, without knowing in advance that the testimony will be useful. The public policy of simplifying litigation and encouraging settlement militates in favor of these interviews, providing there has been a waiver of the physician-patient privilege. . . .

January 3, 2018 order does not use imprisonment as a sanction; rather, the trial court imposed monetary sanctions and required the plaintiffs' attorney to write a letter of retraction.

We reject the plaintiffs' argument that the January 3, 2018 order is a contempt order. Rather, the trial court used its inherent discretion to impose sanctions to control the discovery process. *See Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 742 (Tenn. 2015).

The plaintiffs also argue that this appeal is proper under the collateral order doctrine; they cite cases for the proposition that an award of sanctions, which is separate from the merits of the underlying case, is final under the collateral order doctrine. As we will discuss below, however, the cases do not stand for such a broad proposition. The Tennessee cases cited by the plaintiff involved civil rights actions under 42 U.S.C. § 1983. *See Cantrell v. DeKalb Cnty.*, 78 S.W.3d 902, 906 (Tenn. Ct. App. 2001); *Fann v. Brailey*, 841 S.W.2d 833, 834 (Tenn. Ct. App. 1992); *Kennedy v. City of Cleveland*, 797 F.2d 297, 298-300 (6th Cir. 1986). In *Mitchell v. Forsyth*, 472 U.S. 511, 526-30 (1985), the United States Supreme Court held that the denial of a claim for qualified immunity under the Civil Rights Act constitutes a "final decision" under 28 U.S.C. § 1291 and is, therefore, subject to immediate appeal even though there is not yet a final judgment in the case. In so holding, the Court relied upon the collateral order doctrine, which originated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *Mitchell*, 472 U.S. at 524-25.

In the *Cohen* case, a stockholder derivative action, a New Jersey statute, if applicable, would make the plaintiff stockholders liable for expenses and attorney fees in the event their derivative suit was not successful; and the law would require the plaintiffs to indemnify the defendant corporation prior to prosecution of the suit. *Cohen*, 337 U.S.

---

Although the [court] rules are silent on informal methods of discovery, prohibition of all ex parte interviews would be inconsistent with the purpose of providing equal access to relevant evidence and efficient, cost-effective litigation. The omission of interviews from the court rules does not mean that they are prohibited, because the rules are not meant to be exhaustive. See MCR 2.302(F)(2) (permitting parties to modify the court rules to use other methods of discovery). Their absence from the court rules does indicate that they are not mandated and that the physician cannot be forced to comply, but there is nothing in the court rules precluding an interview if the physician chooses to cooperate. Furthermore, where there is a legitimate concern over the discovery of irrelevant data, the possibility of undue influence, or the threat of breach of the physician's ethical duty, the party asserting the privilege could always establish the proper parameters for questioning through a protective order. MCR 2.302(C).

*Domako v. Rowe*, 475 N.W.2d 30, 36 (Mich. 1991); *see also Arons v. Jutkowitz*, 880 N.E.2d 831, 838 (N.Y. 2007).

at 543-45. The defendants sought a $125,000 bond. *Id.* at 545. The district court opined that the state statute did not apply in federal court; the court of appeals reached the opposite result. *Id.* The threshold issue before the Supreme Court was whether the district court's order refusing to apply the statute was a final decision subject to appeal under 28 U.S.C. § 1291. *Id.* The Court reasoned that the order "did not make any step toward final disposition of the merits of the case and will not be merged in final judgment." *Id.* at 546. At the time of judgment, "it will be too late effectively to review the present order and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably." *Id.* The Court reached the following conclusion:

> This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than a technical construction. *Bank of Columbia v. Sweeney*, [26 U.S. 567, 569 (1828)]; *United States v. River Rouge Improvement Co.*, 269 U.S. 411, 414, 46 S.Ct. 144, 145, 70 L.Ed. 339 [(1926)]; *Cobbledick v. United States*, 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783 [(1940)].

> We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it. But we do not mean that every order fixing security is subject to appeal. Here it is the right to security that presents a serious and unsettled question. If the right were admitted or clear and the order involved only an exercise of discretion as to the amount of security, a matter the statute makes subject to reconsideration from time to time, appealability would present a different question.

*Id.* at 546-47.

The plaintiffs cite *In re All Assessments*, 67 S.W.3d 805, 818 (Tenn. Ct. App. 2001), and assert that Tennessee follows the rule set forth in *Cohen*. We respectfully disagree. In *In re All Assessments*, the court was called upon to determine the constitutionality of statutory depreciation schedules for tangible personal property. *In re All Assessments*, 67 S.W.3d at 816. One issue was whether the Tennessee courts were bound by federal court decisions interpreting the state constitution. *Id.* at 818. In that context, the court quoted with approval from *Johnson v. Fankell*, 520 U.S. 911, 916 (1997), concerning the definition of "final decision" adopted in the *Mitchell* decision, which was "'an application of the 'collateral order' doctrine first recognized in *Cohen*.'" *Id.* (quoting *Johnson*, 520 U.S. at 916). The point being made by the court was that it was not bound by a federal district or circuit court definition of what constitutes a "final

decision" in the case before it. *Id.* The only Tennessee cases cited by the plaintiffs that apply the collateral source doctrine are federal civil rights claims.

In the present case, there is no basis for appeal of the January 3, 2018 order (and the June 18, 2018 order) under Tenn. R. App. P. 3. Rather, as in other cases involving an order that is not final under Tenn. Code Ann. § 29-26-121(f), an extraordinary appeal under Tenn. R. App. P. 10 is the appropriate avenue for an appeal. *See Caldwell*, 2016 WL 3226431, at *1.

CONCLUSION

For the foregoing reasons, the appeal is dismissed, with costs of the appeal assessed against the appellants, Hallysah Ibsen and Robert Kelly, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE