739 F.2d 1109
 35 Fair Empl.Prac.Cas. 480,
35 Empl. Prac. Dec. P 34,636
Artell M. HENRY, (81-1767) Plaintiff-Appellant,
v.
CITY OF DETROIT MANPOWER DEPARTMENT, Defendant-Appellee.
Douglas L. GORDON, (81-5827) Plaintiff-Appellant,
v.
George WILSON, Al Parke, Dr. Hodge, Defendants-Appellees.
Norman E. COX, (81-5878) Plaintiff-Appellant,
v.
UNION CARBIDE CORPORATION, Defendant-Appellee.
Ronny Lee PARRISH, (82-5009) Plaintiff-Appellant,
v.
John O. MARSH, Jr., Secretary of the Army, Defendant-Appellee.
 Nos. 81-1767, 81-5827, 81-5878 and 82-5009.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 25, 1983.
Decided July 20, 1984.
 
 John Gleeson (argued), Cravath, Swaine & Moore, New York City, for all plaintiffs-appellants.
 Douglas L. Gordon, Norman E. Cox and Ronny Lee Parrish, pro se.
 George Matish, Kenneth G. King, Frank W. Jackson, Catherine C. McLaughlin (argued), Detroit, Mich., for City of Detroit Manpower Dept.
 Barbara W. Jones, Dept. of Corrections, Linda G. Cooper (argued), Frankfort, Ky., for George Wilson, Al Parke and Dr. Hodge.
 E.H. Rayson (argued), Kramer, Johnson, Rayson, Knoxville, Tenn., G. Wilson Horde, Oak Ridge, Tenn., for Union Carbide Corp.
 John S. Albanese, HODA, DAJA-LTC, Peter Loewenberg (argued), Washington, D.C., Alexander T. Taft, Jr., David T. Gray, Asst. U.S. Atty., Louisville, Ky., for John O. Marsh, Jr.
 Before EDWARDS and KRUPANSKY, Circuit Judges, and BROWN, Senior circuit judge.
 GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.
 
 
 1
 The plaintiffs in these civil rights actions appeal from denial by four different District Courts of their motions for appointment of counsel. The immediately controlling issue in each case is whether or not denial of counsel is an appealable final order. The four cases have been consolidated for appellate decision.
 
 
 2
 Each of these cases is entirely separate and distinct. None has been the subject of trial on the merits in the District Court. In one of them, the District Judge did attempt to comply with the purposes of the federal equal employment opportunity statutes involved by making two appointments of counsel and seeking to make another. We cannot appropriately, however, decide whether dismissal of even this complaint is appropriate without first deciding whether or not these appeals are viable.
 
 
 3
 In another case, Parrish v. Marsh, the District Judge made a genuine effort to ascertain whether Parrish's claim had merit. The problem with failure to appoint counsel, no matter how carefully the District Judge sought to handle the matter without appointing counsel, is probably illustrated best in Parrish in the context of a claim of racial discrimination where appellant's ultimate rights may have been seriously and adversely affected by lack of a lawyer for purposes of investigation, organization of evidence and filing of an adequate complaint. Of course it is likewise possible that at trial, even with legal representation, each of these cases could prove to be frivolous. The point is that without at least the investigation by competent counsel, no one will ever know the answer to that question.
 
 
 4
 We hold that all four of these cases are appealable.
 
 
 5
 Each of these cases was filed under one of the following statutes where Congress specifically recognized the need for legal representation: Title VII of the Civil Rights Act of 1964, Sec. 706(f)(1)(B), 42 U.S.C. Sec. 2000e-5(f)(1)(B) (1976), provides:
 
 
 6
 Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security.
 
 Title 28 U.S.C. Sec. 1915(d) provides:
 
 7
 The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.
 
 
 8
 In the Civil Rights Act, Congress clearly recognized 1) that many civil rights grievants would be likely to be indigent and "unable to employ counsel," and 2) that the very nature of the litigation authorized was likely to be complex so as to require counsel for preparation and presentation in court. Congress also demonstrated its concern by waiving payment of fees, costs and security. (Congress however, did not provide for payment of legal fees but apparently thought it appropriate for members of the bar to handle these cases through pro bono service after appointment by federal courts.) It did provide for federal courts to award fees to a prevailing party. See 42 U.S.C. Sec. 2000e-5(k).
 
 
 9
 This Court now holds that a citizen seeking to file a civil rights complaint has a right of appeal from a denial of appointment of counsel because of 1) the concerns expressed in the legislative history of the Civil Rights Act; 2) applicable Supreme Court case law; 3) precedent in the majority of the circuits which have spoken on the issue and 4) the closest applicable case law in this circuit.
 
 I. Legislative History
 
 10
 Congress has indicated its understanding of the difficulties faced by civil rights litigants.
 
 
 11
 It is important to note that subsection 715(a) in the bill provides that where the individual has elected to pursue his action in the court, the court may, in such circumstances as it deems just, appoint an attorney for the complainant and authorize the commencement of the action without the payment of fees, costs or security. By including this provision in the bill, the committee emphasizes that the nature of Title VII actions more often than not pits parties of unequal strength and resources against each other. The complainant, who is usually a member of a disadvantaged class, is opposed by an employer who not infrequently is one of the nation's major producers, and who has at his disposal a vast array of resources and legal talent.
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 The complexity of many of the charges, and the time required to develop the cases, is well recognized by the committee. It is assumed that individual complainants, who are apprised of the need for the proper preparation of a complex complaint involving multiple issues and extensive discovery procedures, would not cut short the administrative process merely to encounter the same kind of delays in a court proceeding. It would, however, be appropriate for the individual to institute a court action where the delay is occasioned by administrative inefficiencies. The primary concern must be protection of the aggrieved person's option to seek a prompt remedy in the best manner available.
 
 
 15
 H.R.Rep. No. 238, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News, 2137, 2148 (emphasis added).
 
 
 16
 As indicated above, the 1964 Civil Rights Act, 42 U.S.C. Sec. 2000e-5(f)(1)(B) provides:
 
 
 17
 Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security.
 
 
 18
 This provision resembles 28 U.S.C. Sec. 1915(d) enacted in 1892 for plaintiffs proceeding in forma pauperis in civil actions: "The court may request an attorney to represent any such person unable to employ counsel."
 
 
 19
 Prior to 1972 the EEOC had only conciliation powers in obtaining compliance with Title VII of the 1964 Civil Rights Act. Congress significantly strengthened the enforcement powers of the EEOC in 1972 because of dissatisfaction with implementation of Title VII. While empowering the EEOC to initiate litigation on behalf of Title VII complainants, the 1972 Amendments also re-enacted the provisions authorizing private individuals to initiate their own civil actions. House Report No. 92-238 on the Equal Employment Opportunity Act of 1972 explains the importance of re-enacting the 1964 language on court appointed counsel. Because of EEOC staff shortages, parties had had to wait up to three years for final conciliation procedures to be instituted.
 
 
 20
 This situation leads the committee to believe that the private right of action, both under the present act and in the bill, provides the aggrieved party a means by which he may be able to escape from the administrative quagmire which occasionally surrounds a case caught in an overloaded administrative process.
 
 
 21
 1972 U.S.Code Cong. & Ad.News, 2137, 2147-48.
 
 
 22
 As previously pointed out, Congress recognized that a civil rights "complainant who is usually a member of a disadvantaged class, is opposed by an employer who not infrequently is one of the nation's major producers, and who has at his disposal a vast array of resources and legal talent."
 
 
 23
 This imbalance in civil rights litigation is at the center of the right to counsel issue because it illustrates the futility (probably impossibility) of a civil rights plaintiff who is unable to hire counsel proceeding pro se after rejection of such a motion for appointment of counsel. As Congress recognized, rejecting such a motion means that the final curtain drops before the play begins.
 
 II. Supreme Court Precedent
 
 24
 We turn now to Supreme Court precedent which establishes guidelines on the issue of when an order is "final" for purposes of immediate appealability under 28 U.S.C. Sec. 1291. In Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court defined the circumstances under which appeals may be taken before ultimate decision by the District Court. The appeal involved a district court's refusal to apply a state statute requiring a plaintiff in a shareholder's derivative action to post security for costs.
 
 
 25
 At the threshold we are met with the question whether the District Court's order refusing to apply the statute was an appealable one. Title 28 U.S.C. Sec. 1291 provides, as did its predecessors, for appeal only, "from all final decisions of the district courts," except when direct appeal to this Court is provided. Section 1292 allows appeals also from certain interlocutory orders, decrees and judgments, not material to this case except as they indicate the purpose to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties. It is obvious that, if Congress had allowed appeals only from those final judgments which terminate an action, this order would not be appealable.
 
 
 26
 The effect of the statute is to disallow appeal from any decision which is tentative, informal or incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal. But the District Court's action upon this application was concluded and closed and its decision final in that sense before the appeal was taken.
 
 
 27
 Nor does the statute permit appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results. But this order of the District Court did not make any step toward final disposition of the merits of the case and will not be merged in final judgment. When that time comes, it will be too late effectively to review the present order, and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably. We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision of the merits of this case.
 
 
 28
 This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than a technical construction. Bank of Columbia v. Sweeney, 1 Pet., 567, 569, 7 L.Ed. 265, United States v. River Rouge Co., 269 U.S. 411, 414, 46 S.Ct. 144, 145, 70 L.Ed. 339; Cobbledick v. United States, 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783.
 
 
 29
 Id. at 545-46, 69 S.Ct. at 1225 (emphasis added).
 
 
 30
 Each of the appeals which we deal with in this case likewise "appears to fall in that small class which finally determines rights separable from and collateral to rights asserted in (these) actions." They present an issue which is not an "ingredient" of the cause of action. They are easily separable from the cause of action. To the plaintiffs concerned, as Congress recognized, appointment of counsel is "too important to be denied review."
 
 
 31
 In Roberts v. U.S. District Court, 339 U.S. 844, 70 S.Ct. 954, 94 L.Ed. 1326 (1950), a case subsequent to the Cohen case involving an imprisoned plaintiff who had been denied in forma pauperis appeal, the Supreme Court held:
 
 
 32
 The denial by a District Judge of a motion to proceed in forma pauperis is an appealable order. 28 U.S.C. Sec. 1291; see Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).
 
 
 33
 The Roberts per curiam, quoted above should be read as closely applicable to and controlling of the instant cases which are before this court. In granting in forma pauperis appeal, the Supreme Court pointed directly to Cohen v. Beneficial Industrial Loan Corp. The Roberts case has never been overturned or modified.
 
 
 34
 In Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Supreme Court held that an order denying a motion to disqualify plaintiff's opponent's chosen counsel was not a final and appealable order. Contrary to the situations with which we deal, however, no party in the Firestone case was denied counsel. Nor was any party ever denied the counsel of its own first choice. Further, as the court pointed out, the District Court, after trial, could reassess the merits of the disqualification motions, if the facts at trial justified, and grant a motion for new trial. Firestone clearly does not mandate denial of appeal in our instant cases.
 
 
 35
 In Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), the Supreme Court dealt with and established the non-appealability of denial of a prejudgment order denying class certification. It is not germane to this appeal.[1]
 
 
 36
 Quotation of Justice Stevens' opinion for a unanimous court applies the "collateral exception rule" and "death knell doctrine" to a class certification issue quite distinct from the question of representation raised on this appeal.
 
 I.
 
 37
 To come within the "small class" of decisions excepted from the final-judgment rule by Cohen, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.
 
 
 38
 * * *
 
 
 39
 * * *
 
 
 40
 An order passing on a request for class certification does not fall in that category. First, such an order is subject to revision in the District Court. Fed.Rule Civ.Proc. 23(c)(1). Second, the class determination generally involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Mercantile Nat. Bank v. Langdeau, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523. Finally an order denying class certification is subject to effective review after final judgment at the behest of the named plaintiff or intervening class members. United Airlines, Inc. v. McDonald, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423. For these reasons, as the Courts of Appeals have consistently recognized, the collateral-order doctrine is not applicable to the kind of order involved in this case.
 
 II.
 
 41
 Several Circuits, including the Court of Appeals in this case, have held that an order denying class certification is appealable if it is likely to sound the "death knell" of the litigation. The "death knell" doctrine assumes that without the incentive of a possible group recovery the individual plaintiff may find it economically imprudent to pursue his lawsuit to a final judgment and then seek appellate review of an adverse class determination. Without questioning this assumption, we hold that orders relating to class certification are not independently appealable under Sec. 1291 prior to judgment.
 
 
 42
 * * *
 
 
 43
 * * *
 
 
 44
 The finality requirement in Sec. 1291 evinces a legislative judgment that "[r]estricting appellate review to 'final decisions' prevents the debilitating effect on judicial administration caused by piecemeal appeal disposition of what is, in practical consequence, but a single controversy." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732. Although a rigid insistence on technical finality would sometimes conflict with the purposes of the statute, Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, even adherents of the "death knell" doctrine acknowledge that a refusal to certify a class does not fall in that limited category of orders which, though nonfinal, may be appealed without undermining the policies served by the general rule.
 
 
 45
 Accordingly, we hold that the fact that an interlocutory order may induce a party to abandon his claim before final judgment is not a sufficient reason for considering it a "final decision" within the meaning of Sec. 1291.
 
 
 46
 437 U.S. at 468, 469, 471, 477, 98 S.Ct. at 2462 (citations and footnotes omitted).
 
 
 47
 There is no suggestion in the Coopers & Livesay opinion that counsel would be unavailable for either the present plaintiffs or members of the class or that either would be unable to prosecute their claims. Nor are any of the other reasons for denial of immediate review applicable to our instant case.
 
 
 48
 We now turn to the latest decision of the United States Supreme Court concerning the interpretation of the finality rule in Justice O'Connor's opinion for a unanimous Supreme Court in Flanagan v. United States, --- U.S. ----, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). In Flanagan, the Court dealt with a District Court pre-trial order disqualifying a defendant's law firm in a prospective criminal trial. The court emphasized the need for avoiding delay in criminal trials saying:
 
 
 49
 More than 40 years ago the Court noted that the reasons for the final judgment rule are "especially compelling in the administration of criminal justice." Cobbledick v. United States, supra, 309 U.S., at 325, 60 S.Ct., 541. Promptness in bringing a criminal case to trial has become increasingly important as crime has increased, court dockets have swelled, and detention facilities have become overcrowded.
 
 
 50
 As the Sixth Amendment's guarantee of a Speedy Trial indicates, the accused may have a strong interest in speedy resolution of the charges against him. In addition, "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." Barker v. Wingo, 407 U.S. 514, 519, 92 S.Ct. 2182, 2186, 33 L.Ed.2d 101 (1972). As time passes, the prosecution's ability to meet its burden of proof may greatly diminish: evidence and witnesses may disappear, and testimony becomes more easily impeachable as the events recounted become more remote. Delay increases the cost of pretrial detention and extends "the period during which defendants released on bail may commit other crimes." United States v. MacDonald, 435 U.S. 850, 862, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18 (1978). Delay between arrest and punishment prolongs public anxiety over community safety if a person accused of a serious crime is free on bail. It may also adversely affect the prospects for rehabilitation. See Barker v. Wingo, supra, 407 U.S., at 520, 92 S.Ct., at 2187. Finally, when a crime is committed against a community, the community has a strong collective psychological and moral interest in swiftly bringing the person responsible to justice. Prompt acquittal of a person wrongly accused, which forces prosecutorial investigation to continue, is as important as prompt conviction and sentence of a person rightly accused. Crime inflicts a wound on the community, and that wound may not begin to heal until criminal proceedings have come to an end.
 
 
 51
 * * *
 
 
 52
 * * *
 
 
 53
 Because of the compelling interest in prompt trials, the Court has interpreted the requirements of the collateral-order exception to the final judgment rule with the utmost strictness in criminal cases.
 
 
 54
 104 S.Ct. at 1054, 1055.
 
 
 55
 Justice O'Connor also emphasized that the disqualification of counsel issue would be subject to review as an issue in the appeal of any guilty verdict. Obviously neither of these bases for decision are applicable to these four civil rights appeals. The defendants in Flanagan, while unable to have counsel of choice, would still be represented at trial and on appeal. In civil rights cases indigent plaintiffs without any representation would rarely, if ever, complete trial and perfect an appeal. The compelling interest in a prompt criminal trial for the Flanagan defendants does not apply in trials of civil rights claims brought by indigent plaintiffs. Two Circuits have held that Flanagan does not prevent immediate appeal when counsel has been disqualified in a civil case. Koller v. Richardson-Merrell, Inc., 737 F.2d 1038 (D.C.Cir.1984); Interco Systems Inc. v. Omni Corporate Services, 733 F.2d 253, 255 (2d Cir.1984). The final judgment rule should not defeat the congressional effort to obtain civil enforcement of the civil rights laws.
 
 III. Precedent In The Courts of Appeals
 
 56
 We turn to precedent on this issue in the various courts of appeals. There are four circuits which have held that an impoverished civil rights plaintiff who seeks and is denied appointed counsel has a right to an interlocutory appeal. Two of these cases preceded decision in the Firestone case. Two followed Firestone. Arranged in reverse order of decision they are as follows: Ray v. Robinson, 640 F.2d 474 (3rd Cir.1981); Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301 (9th Cir.1981); Hudak v. Curators of the University of Missouri, 586 F.2d 105 (8th Cir.1978), cert. denied, 440 U.S. 985, 99 S.Ct. 1799, 60 L.Ed.2d 247 (1979); Caston v. Sears, Roebuck & Co., 556 F.2d 1305 (5th Cir.1977).
 
 
 57
 Judge Reinhardt's decision for a Ninth Circuit panel in the Bradshaw case cited above provides an excellent discussion of the applicable and controlling law. Concerning the three Cohen issues of Finality, Separability and Effective Review, he has included the following paragraphs which I have chosen as summaries of each argument.
 
 1. Finality
 
 58
 The first, and perhaps the simplest, requirement derives from the relation between trial and appellate courts. Section 1291 serves to preserve that relation as one of review, not supervision. Thus the decision of the district court on the particular point at issue should be final. This criterion is satisfied here in that the district court has clearly said its last word on the subject of appointment of counsel, in no way indicating that its order was tentative. Indeed, the appeal here is taken from the denial of a motion to reconsider the earlier ruling. The trial court has effectively, unequivocally, and, as we discuss below, erroneously rejected Miss Bradshaw's request for assistance.
 
 2. Separability
 
 59
 The second criterion under Cohen requires that the court examine the relation between the substance of the order and the merits of the action itself. In Cohen the Court characterized the order as "separable from, and collateral to" the merits. The Court stated that the separability requirement would be satisfied where the order was "too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1226 (emphasis added). The Court said the collateral order exception would not apply to decisions that are "steps" towards final judgment on the merits. One might well simply conclude from the above, as did the Fifth Circuit in Caston: "Obviously, the refusal to appoint an attorney is collateral to the merits of the case." 556 F.2d at 1308.
 
 3. Effective Review
 
 60
 The last criterion in assessing appealability under Cohen is whether the rights asserted can be adequately protected on appeal from the final judgment. We are unwilling to engage in two untenable assumptions we would be required to make in order to find that "effective review" is available after final judgment on the merits. The first is that civil rights plaintiffs are capable of prosecuting their own cases through trial; the second is that should they somehow succeed in doing so, they will have the determination and capability to perfect and conduct appeals properly and fully after they lose. Both assumptions overlook the congressional judgment to the contrary that led to the enactment of section 2000e-5(f)(1)(B).
 
 
 61
 Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301, 1306, 1307, 1310 (9th Cir.1981).
 
 
 62
 The Bradshaw majority opinion from which I have quoted brief answers to the three Cohen tests, of course, had much more to say on each topic. The full debate between Judge Reinhardt and Judge Wallace is readily available. Judge Reinhardt's opinion is better reasoned, is directly applicable to our cases and should be followed.
 
 
 63
 The same may be said generally in comparing the four Courts of Appeals' opinions holding that denied motions to appoint in the instant type of cases are appealable, to the three opinions which follow which took a contrary point of view. See Appleby v. Meachum, 696 F.2d 145 (1st Cir.1983); Randle v. Victor Welding Supply Co., 664 F.2d 1064 (7th Cir.1981); and Cotner v. Mason, 657 F.2d 1390 (10th Cir.1981).
 
 
 64
 It may be significant that none of the three cases referred to immediately above was filed under Title VII. It is also significant that the four Circuit Courts of Appeals cited earlier have all allowed appeals based on Title VII.
 
 IV. Sixth Circuit Cases
 
 65
 In General Electric Co. v. Valeron, 608 F.2d 265 (6th Cir.1979), cert. denied, 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980), with Judge Brown writing for a panel of the Sixth Circuit, which included the author of this opinion, the court took jurisdiction of an order disqualifying appellant's chosen counsel, affirming the disqualification. We there upheld General Electric's claim that Valeron's counsel had a conflict of interest from earlier legal work for General Electric. There would seem to be much more reason for considering our current cases to be immediately appealable than in the General Electric appeal.
 
 
 66
 This same comment may be made in relation to this court's opinions in Melamed v. ITT Continental Baking Co., 534 F.2d 82 (6th Cir.1976) and Melamed v. ITT Continental Baking Co., 592 F.2d 290 (6th Cir.1979). See also Koller v. Richardson-Merrell, Inc., 737 F.2d 1038 (D.C.Cir.1984); Interco Systems Inc. v. Omni Corporate Services, 733 F.2d 253 (2d Cir.1984).
 
 
 67
 In United States v. Caggiano, 660 F.2d 184 (6th Cir.1981), this court summarized the rule in civil cases:
 
 
 68
 The weight of authority is that in civil cases an order granting a motion to disqualify is immediately appealable as a final order under Sec. 1291 while an order denying a motion to disqualify is not appealable under Sec. 1291. General Electric Co. v. Valeron Corp., 608 F.2d 265 (6th Cir.1979), cert. denied, 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980), and Armstrong v. McAlpin, 625 F.2d 433, 440-441 (2nd Cir.1980) (en banc) vacated on other grounds, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981), holds that orders granting disqualification are appealable and Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 896, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), holds that orders denying such motions are not appealable under Sec. 1291. See cases collected in United States Code Service 28 U.S.C. Sec. 1291 Note 72, entitled Disqualification of Counsel and Note 72 in its May 1981 Cumulative Supplement.
 
 
 69
 No Sixth Circuit precedent is directly applicable to this appeal. But the cases cited and discussed above generally have treated the disqualification of a party's retained counsel in a civil action as appealable. If disqualification of counsel of a party's choice is "final" for purposes of appealability, it is clear that denial of any counsel at all to a party unable to afford one is all the more "final" for purposes of 28 U.S.C. Sec. 1291.
 
 
 70
 In summary, there is really only one actually debatable issue, namely Finality. It is obvious that the denial of a motion for counsel is completely separate and distinct from the merits of a civil rights complaint concerning employment discrimination. It is equally obvious that absent appointment of counsel by this appellate court, there could have been no effective review. This appeal was briefed and argued on behalf of the four complainants below by counsel appointed by this court.[2]
 
 
 71
 I return now to Finality, the only issue upon which there is really any logical debate--if indeed it can be found there. It can, of course, with at least surface logic, be argued that denial of counsel is not "final" because an impoverished litigant can proceed in forma pauperis to try the case himself. Indeed some such efforts may from time to time have succeeded--albeit rarely.
 
 
 72
 There are few legal issues which come before the federal courts which offer more complexity than the often critical, shifting standards of proof in employment discrimination cases. See, e.g., United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); Burdine v. Texas Department of Community Affairs, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). When the basic assertion of a plaintiff is that he or she was discharged because of race, a plaintiff without legal training or advice could hardly be expected to know that an outburst of racially derogatory language from a company employment manager concerning another employee in a different department might well serve to convince the trier of fact that the company's reasons for discharge were "pretextual." Would the same in pro per plaintiff, if such legal knowledge did somehow come to him or her, also be able to take the witness' deposition and subpoena that witness so as to protect against employer pressure toward silence or prevarication? Affirmative answers to these questions approach fantasy.[3]
 
 
 73
 We hold that the court has jurisdiction to hear all four appeals.
 
 V. Abuse of Discretion
 
 74
 We turn now to a brief analysis of each of the present appeals as to which it is contended that the District Court involved abused judicial discretion in denying appointed counsel.
 
 
 75
 As to Henry v. City of Detroit, we find no such abuse, since the District Judge already made good faith efforts to comply with the congressional purpose of providing counsel. The record in Henry indicates that two (possibly three) designations of counsel were made. There is no requirement that the District Judge, in seeking a lawyer to prosecute a civil rights claim on behalf of a person unable to pay, must either satisfy the desire (or whim) of the complainant in relation to such potentially charitable representation or order a lawyer to file a case which his investigation indicates is frivolous. The judgment of the district court is affirmed.
 
 
 76
 In Cox v. Union Carbide, appellant Cox paid the filing fee and hired a lawyer to file his complaint asserting discriminatory discharge. When Union Carbide sought to take depositions, Cox moved the Court for a stay of depositions and the appointment of counsel. Cox has conceded that he has title to a house and a car and by the time he brought his lawsuit, he had found new employment. We find abuse of discretion in the District Court's failure to conduct a hearing on Cox's financial ability to retain counsel. This Court has held that proof of indigency is not required as a prerequisite for appointment of counsel. See Harris v. Walgreen's Distribution Center, 456 F.2d 588 (6th Cir.1972). The case is remanded for a determination of Cox's financial ability to pay for counsel.
 
 
 77
 In the third Title VII appeal which we review (Parrish v. Marsh ), appellant charges the U.S. Army with racial abuse and discrimination which occasioned his being placed on medical leave. He specifically charges that his supervisor called him "a little black son of a bitch." The District Judge, after a hearing where he concluded that Parrish had diligently attempted to procure counsel but appointed none, reached the merits of the Army's failure to exhaust administrative remedies defense and dismissed the complaint. While we can make no judgment as to the validity of the Army's defense on the present record, we do conclude that legal counsel is required for meeting such an issue and we reverse and remand for appointment of counsel.
 
 
 78
 The fourth of these cases, dismissed without counsel, Gordon v. Wilson, et al., is a prisoner complaint alleging inadequate examinations and medical treatment. The District Judge referred the complaint to a Magistrate for pretrial proceedings. During these, appellant requested the appointment of a fellow inmate as lay counsel. The Magistrate, indicating familiarity with the work of the fellow prisoner, denied the motion whereupon Gordon brought this appeal. There is no indication in this record that the District Judge ever reviewed the Magistrate's order or plaintiff's alternative request for appointment of a specific Lexington attorney. This appeal should therefore be remanded to the District Court for further proceedings in accord with 28 U.S.C. Sec. 636(b)(1) and Hill v. Duriron Company, Inc., 656 F.2d 1208, 1215 (6th Cir.1981).
 
 
 79
 BAILEY BROWN, Senior Circuit Judge, dissenting.
 
 
 80
 The majority's opinion substantially erodes the rule restricting appellate review to the final decisions of a district court. By an unfortunate expansion of the exception for so-called "collateral orders," the majority's decision will invite numerous--if not automatic--appeals of decisions frequently made on incomplete and developing records. Because the majority's decision is contrary to the policy against piecemeal review and contravenes the Supreme Court's most recent delineations of exceptions to that policy, I must respectfully dissent.
 
 
 81
 Although the rule restricting federal appellate review to final decisions is grounded on the statutory jurisdiction of the courts of appeals, 28 U.S.C. Sec. 1291, the justification for the restriction emanates from the organization of the judicial system. The rule prevents the drain on the resources of the litigants and the judicial system that would result from the separate appeals of various rulings made during the course of a district court proceeding. The requirement of finality ensures the integrity of the trial process and the orderly and efficient review of claims on appeal. Finality "is not a technical concept of temporal or physical termination. It is the means for obtaining a healthy legal system." Cobbledick v. United States, 309 U.S. 323, 326, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940).[1]
 
 
 82
 So strong is the policy undergirding the rule, that this court may accept for review only the "limited category of cases falling within the 'collateral order exception' of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-47, 69 S.Ct. 1221, 1225-27, 93 L.Ed. 1528 (1949)." United States v. Hollywood Motor Car Co., 458 U.S. 263, 265, 102 S.Ct. 3081, 3083, 73 L.Ed.2d 754 (1982). The exception must be strictly applied lest the court, in sympathetic response to particular circumstances, open the door to a host of cases that would vitiate the rule.[2]
 
 
 83
 A decision falls within the exception if and only if it (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment. Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). These factors must be carefully applied in light of precedent and the purposes served by the final judgment rule. The majority's opinion, I believe, fails in these respects.
 
 
 84
 In Cohen, the Court held that only decisions conclusively disposing of an issue could be appealed. "Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal." 337 U.S. at 546, 69 S.Ct. at 1225. At issue in that case was a district court's ruling in a stockholder's derivative suit denying a corporate defendant's demand that the plaintiff post a bond. The demand was made pursuant to a state statute making a plaintiff holding a small amount of stock liable for the fees and expenses of a successful defendant. The Court noted that the lower court's ruling finally disposed of a serious and unsettled matter. The Court contrasted this order with a determination fixing the amount of the bond, a discretionary matter that the statute made subject to reconsideration from time to time. Such an order, the Court implied, would be considered inconclusive because of the procedural opportunity for reconsideration. Thus, in Coopers & Lybrand v. Livesay, the Court found an order denying class certification "inherently tentative" because such an order was subject to revision before a decision on the merits under Fed.R.Civ.P. 23(c)(1). 437 U.S. at 469 n. 11, 98 S.Ct. at 2458 n. 11. Although a statute or rule providing for revision of an order may deprive it of finality, other aspects of a decision may also render an order inconclusive. An indication by the court that the order is conditional or otherwise tentative will deny finality to an order. See Gerstle v. Continental Airlines, Inc., 466 F.2d 1374 (10th Cir.1972).[3]
 
 
 85
 Although there is no special provision for the reconsideration of a refusal to appoint counsel under the statutes now in issue, the very nature of the question suggests that the determination should not be deemed conclusive for purposes of appeal.[4] As the facts of the case unfold indicating that the cause may have merit and the proceedings enter a stage where pro se representation becomes obviously impractical and assistance is necessary, a district court may properly entertain a new motion for appointment of counsel.[5] Because the factual basis for a decision involving the appointment of counsel is necessarily evolving and multifarious, an initial denial is inherently inconclusive. In this respect, the decision is similar to the alteration of a bond to secure a defendant during the course of a trial. As discussed in Cohen, because such a determination is intertwined in varying considerations central to the management of a lawsuit, appeal would constitute improper intervention.
 
 
 86
 In Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Supreme Court held that orders denying motions to disqualify counsel were not appealable under Sec. 1291 prior to final judgment. The Court noted that such orders were necessarily subject to developments at trial.
 
 
 87
 The propriety of the district court's denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally only after final judgment. The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand, and the order embodying such a decision will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits.
 
 
 88
 Id. at 377, 101 S.Ct. at 675. This reasoning is applicable to the instant cases. A motion for appointment of counsel is typically made immediately after a complaint is filed. A fair evaluation of the merits of the case must usually await a pre-trial conference and some form of discovery. A rational allocation of judicial resources suggests that appellate consideration await the final disposition of the suit.
 
 
 89
 The requirement under Cohen that the order resolve an issue completely separate from the merits is not satisfied if the decision involves considerations "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Coopers & Lybrand v. Livesay, 437 U.S. at 469, 98 S.Ct. at 2458, quoting from, Mercantile Nat. Bank v. Langdeau, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963). This requirement promotes judicial economy and protects orderly procedure at trial by prohibiting appellate intervention where the decision constitutes a stage in the final disposition of the substance of the litigation. As noted above, the determinations in the instant cases turn in part on the courts' evaluation of the merits. Although the determination does not dispose of an element in the claim, appeal of the question would disrupt the orderly development of the case.
 
 
 90
 The third requirement of the Cohen test--whether the order is effectively unreviewable on appeal from a final judgment--principally accounts for the serious division of authority on this issue among the circuits.[6] The majority, echoing the reasoning in Bradshaw v. Zoological Society, 662 F.2d 1301, 1310-14 (9th Cir.1981), maintains that this requirement is satisfied by the likely inability of a pro se plaintiff to continue a suit through trial and perfect an appeal. The majority finds that a plaintiff facing such barriers would abandon the suit before final judgment. These practical considerations, the majority concludes, render the denial of appointment of counsel effectively unreviewable on appeal from a final judgment.
 
 
 91
 The practical consequence of an interlocutory order that might force a plaintiff to abandon a lawsuit gave rise to the so-called "death knell" doctrine. The doctrine was used to review denials of class certifications where appeals courts assumed or found that the plaintiff would find it economically imprudent or impossible to pursue claims without the possibility of a class recovery. The Supreme Court, in Coopers & Lybrand v. Livesay, rejected this approach. The Court held that "the fact that an interlocutory order may induce a party to abandon his claim before final judgment is not a sufficient reason for considering it a 'final decision' within the meaning of Sec. 1291." 437 U.S. at 477, 98 S.Ct. at 2462.
 
 
 92
 The majority attempts to distinguish Coopers & Lybrand v. Livesay on the grounds that even after denial of class certification, counsel would remain to pursue the plaintiff's claims. This distinction, however, misses the entire thrust of the Court's decision. The death knell doctrine was predicated on the assumption that a plaintiff would be unable to bear the expense of going forward with a trial without the incentive of an award to the alleged class. Therefore, the putative class representative for whom the "death knell" sounds, is in the same practical position as that which the majority ascribes to the civil rights litigant who is denied appointed counsel. Thus, Coopers & Lybrand squarely rejects the majority's view that an order is appealable because it presents the plaintiff with such practical difficulties as to cause the plaintiff to abandon the suit.
 
 
 93
 The majority's construction of the requirement that an order be effectively unreviewable should be contrasted with decisions properly finding that an order satisfies this element of the Cohen exception. For example, a dismissal of one of several claims is appealable where the dismissal is a predicate for a remand to state court. Denying finality to the order would eliminate appellate review. Waco v. United States Fidelity & Guaranty Co., 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934). Similarly, where the right asserted would be irremediably lost if trial continued, then the requirement is satisfied. Thus, an order requiring disclosure of plaintiffs' identities in a sex discrimination case was final for purposes of appeal. Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 711-12 (5th Cir.1979). Appeals have also been permitted when a criminal defendant claims that he will be subjected to double jeopardy, Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), or a violation of his constitutional right to bail, Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951). Certain orders denying or removing a form of security for a party to litigation are also not subject to effective review following final judgment. Once the trial proceeds without the security, the right is lost and the party seeking the security may have no remedy on appeal or in a new trial. See Cohen, (permitting appeal of a denial of a bond to secure defendant's costs); Swift & Co. Packers v. Compania Colombiana Del Caribe, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) (permitting appeal of an order vacating an attachment).
 
 
 94
 The majority relies primarily on its view that a civil rights litigant will abandon a suit following an order denying appointment of counsel and that this abandonment will constitute irreparable injury. As discussed above, I believe that this approach is foreclosed by Coopers & Lybrand. The Ninth Circuit in Bradshaw v. Zoological Society, however, notes additional considerations. There, the court asserts that a litigant could make certain errors at trial which might prejudice the litigant in a new proceeding. For example, a litigant could be bound by or impeached by earlier testimony or could suffer from prior stipulations. 662 F.2d at 1311-14. Similar claims of possible prejudice in the conduct of trial, however, were rejected in Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). There, the party seeking immediate review maintained that proceeding to trial following a denial of a motion to disqualify counsel could compromise subsequent proceedings. Such a possibility, the Court held, did not show that the asserted right would be irremediably lost if appeal was postponed until final judgment. The Court noted that similar prejudice often results from erroneous interlocutory decisions. Yet the possibility of such prejudice was not sufficient to support a general exception to the rule limiting appeals to final judgments. 449 U.S. at 378, 101 S.Ct. at 675.
 
 
 95
 The potential for irreparable harm in the conduct of a civil rights trial by a pro se litigant was considered in Appleby v. Meachum, 696 F.2d 145 (1st Cir.1983). The court, relying on Risjord, found that the possibility of harm--although perhaps greater from the denial of appointed counsel than from other orders--did not overcome "the strong statutory policies against piecemeal review." The court noted that where a reviewing court found that the order denying appointment of counsel was erroneous, it could relieve the litigant of "any untoward consequences of his lack of counsel." Id. at 147 n. 3.
 
 
 96
 The appellants in the cases at bar contend that review following final judgment would be ineffective because of the difficulty of showing prejudice.[7] The First Circuit responded to this argument in Appleby by holding that an erroneous order denying appointed counsel would be presumed prejudicial. 696 F.2d at 147. A similar analysis was employed by the Supreme Court in the recent decision of Flanagan v. United States, --- U.S. ----, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). There, the Court held that an order disqualifying counsel in a criminal trial was not immediately appealable. The Court, without deciding whether actual prejudice was required to reverse a district court's disqualification of counsel, held that if prejudice is presumed, post-conviction review is fully effective. Therefore, the Court concluded, the final element of Cohen is not satisfied. On the other hand, if a showing of prejudice is required, the Court found that such an order was not "truly collateral" because the issue decided is not completely separate from the merits, and thus the order would not meet the second condition of Cohen. 104 S.Ct. at 1056-57.
 
 
 97
 Although the majority correctly recognizes that Flanagan was a criminal case and that in such cases there is an especially strong presumption against piecemeal appeals, the decision nevertheless is relevant to the issue before this court. Despite the constitutional implications of a decision denying a criminal defendant counsel of choice, the Court in Flanagan held that such a decision did not merit immediate appeal. By contrast, Congress enacted the provisions for appointment of counsel in the cases at bar. These provisions, which vest the decision in the sound discretion of the trial court, are surely less support for a demand for immediate review than the constitutional grounds which were considered and found insufficient in Flanagan.[8]
 
 
 98
 The Court's decision in Flanagan regarding the balance of factors should also guide this court's consideration of the costs of immediate appeal from orders denying appointment of counsel in civil rights cases. Although interruption of a criminal trial exacts a "presumptively prohibitive price," 104 S.Ct. at 1057, equally heavy costs will be imposed on the judicial system by expanding the exception for collateral orders on the grounds offered by the majority. The majority stresses that these costs are overcome by the public policy evinced by the statutory provisions for appointment of counsel. This argument, however, can be made for a number of various interests affected by interlocutory orders. Acceptance of this criteria would transform the exception for collateral orders into a "license for broad disregard of the finality rule imposed by Congress in Sec. 1291." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. at 378, 101 S.Ct. at 675. Accordingly, the Supreme Court rejected this contention in Coopers & Lybrand v. Livesay where the appellants maintained that the "vital public interest" served by class actions merited special rules of appealability. The Court concluded that such policy arguments, "though proper for legislative consideration, are irrelevant to the issue we must decide." 437 U.S. at 470, 98 S.Ct. at 2458. Unfortunately, the majority ignores this admonition.
 
 
 99
 Congress, it should be noted, has provided civil rights litigants with an important means to overcome the barriers described by the majority. The attorney's fees provision, 42 U.S.C. Sec. 1988, insures that meritorious claims will not go unrepresented because of the plaintiff's inadequate financial resources. The existence and widespread use of this provision weakens the majority's assertion that immediate review is necessary to protect civil rights litigants. The majority's attempt to provide this protection, moreover, could easily escape the area of civil rights litigation. The majority's decision rests in part on 28 U.S.C. Sec. 1915(d), the general provision for appointment of counsel in civil actions. By extension of the majority's reasoning, any civil litigant could obtain immediate review of an order denying appointment of counsel by arguing the importance of the right at stake and the complexity of the issues in the case.
 
 
 100
 The majority also fails to acknowledge the practical consequences of its decision. Because an order denying appointment of counsel is necessarily contingent on events at trial, there is a possibility of repeated appeals in a single case. Any particular order may be remanded for the development of an adequate record, causing further interruption in the trial proceedings. See Coopers & Lybrand v. Livesay, 437 U.S. at 474, 98 S.Ct. at 2461. A litigant, moreover, may feel compelled to seek immediate review because of the fear that a failure to do so would foreclose review of the order on final judgment.[9] This will only add to the delay and disruption wrought by the majority's decision.
 
 
 101
 The greatest fault in the majority's decision is its disregard of the clear policy and directions established by the Supreme Court in recent opinions on the issue of appealability. In Coopers & Lybrand v. Livesay the Court squarely rejected the majority's principal argument that immediate appealability can be supported by the possibility that an appellant may abandon the case. The Court in that case and again in Firestone Tire & Rubber Co. v. Risjord stressed the extremely limited nature of the exception for collateral orders. In the latter case, the Court observed that where manifest injustice would result from reserving appeal until final judgment, the party could seek certification for interlocutory appellate review pursuant to 28 U.S.C. Sec. 1292(b) or a writ of mandamus. These remedies, which were designed to meet exceptional circumstances, were suggested by the Court as preferable to creating a general exception for an entire class of interlocutory orders. 449 U.S. at 378 n. 13, 101 S.Ct. at 675 n. 13. The majority has simply failed to supply cogent reasons grounded in precedent for its departure from the Court's direction.
 
 
 
 [1]
 The Supreme Court has decided that denial of a motion to proceed in forma pauperis is immediately appealable (Roberts ), but that denial of class certification is not immediately appealable (Coopers & Lybrand ). The dissent lists various exceptions to the final judgment rule made after Cohen, but never mentions Roberts. Denial of appointed counsel resembles denial of a motion to proceed in forma pauperis far more than it resembles denial of class certification. The result in this case is governed more by Roberts than by Coopers & Lybrand
 
 
 [2]
 John Gleeson, now of the firm of Cravath, Swaine and Moore of New York City, argued these appeals. He was formerly a law clerk for a judge of the Sixth Circuit. Under instruction of a panel of this court, the Clerk's office, faced by four utterly inadequate attempts at pro se appeals and instruction from a panel of this court to appoint appellate counsel, asked him to file an appellate brief. With permission of the Cravath firm (which also assigned Paul C. Saunders, a member of the firm to the case), he agreed. If in place of pro bono work the usual billing practice of Cravath, Swaine and Moore to a corporate client had been followed, I would surmise that an appropriate billing based on legal hours spent and costs would probably have exceeded the yearly salary of a Justice of the Supreme Court
 
 
 [3]
 I recognize that this paragraph is not fully applicable to the Gordon v. Wilson case which is based on claims of violations of 42 U.S.C. Sec. 1983
 
 
 [1]
 The Supreme Court (per Marshall, J.) recently described how the final judgment rule protects the integrity of the district court
 [The rule] emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system.
 Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981).
 
 
 [2]
 In the face of increasing demands to expand the exception, appeals courts have underscored the importance of strictly applying the Cohen exception
 This court has repeatedly stressed the extraordinarily limited nature of the 'collateral order' doctrine ... We must therefore be parsimonious in our analysis of appealability and not grant an exception ... unless ... all three requirements of Cohen are met."
 In re Corrugated Container Antitrust Litigation, 694 F.2d 1041, 1042-43 (5th Cir.1983). See also U.S. Tour Operators Ass'n v. Trans World Airlines, 556 F.2d 126, 128 (2d Cir.1977) ("The reasons for the final judgment rule, ... and our reluctance to depart from it hardly need explanation again, particularly at a time of swollen appellate dockets."); Cullen v. New York State Civil Service Comm'n, 566 F.2d 846, 848 (2d Cir.1977); Weit v. Continental Illinois Nat. Bank & Trust Co., 535 F.2d 1010, 1014 (7th Cir.1976).
 
 
 [3]
 I suspect that the majority's decision will cause district courts, if inclined to deny motions for appointment, to take such motions under advisement or make denials expressly conditional pending further development of the case
 
 
 [4]
 In Maclin v. Freake, 650 F.2d 885 (7th Cir.1981), the Seventh Circuit stressed the wide discretion exercised by the district court regarding a request for appointed counsel. The "denial of counsel will not be overturned unless it would result in fundamental unfairness impinging on due process rights." Id. at 886. The court lists several factors that should guide such a decision including the merits of the claim, the ability of the litigant to investigate and present the case, and the complexity of the issues presented
 
 
 [5]
 It should be recognized that the trial of a case without benefit of counsel for plaintiff imposes an extra burden on the trial judge. Thus, the judge has a real incentive to appoint counsel before trial
 
 
 [6]
 Compare Randle v. Victor Welding Supply Co., 664 F.2d 1064, 1065 (7th Cir.1981) ("The refusal of the district court to appoint counsel, while it may make proceeding more difficult, does not end the litigation on the merits. The pro se litigant remains free to present his claim to the court on his own.") with Bradshaw v. Zoological Society, 662 F.2d 1301, 1313 (9th Cir.1981) ("Civil rights litigants are presumptively incapable of handling complex litigation themselves and of protecting themselves against the serious prejudice that occurs at trials in which their adversaries are represented by the most sophisticated law firms.")
 
 
 [7]
 In Bradshaw v. Zoological Society, the Ninth Circuit avoided reaching the question of the standard of review of a denial of appointed counsel following final judgment. The court did note that if a showing of prejudice was required, effective review would be even more improbable, particularly where a partially successful plaintiff challenges the remedy. 662 F.2d at 1311 n. 23
 
 
 [8]
 It is especially important that an appellate court refrain from creating a general exception to review orders founded on the exercise of discretion by a district court. Judge Friendly has written:
 Whether a court has power to require an undertaking is an issue of law, and an appellate decision will settle the matter not simply for the case in hand but for many others--as was notably true with the important issue in Cohen. In contrast, where the question is the propriety of an exercise of discretion in denying security, the factual variations are so numerous that a judgment on appeal can do little to establish meaningful standards. Furthermore, since review would be limited to 'abuse' of discretion, the likelihood of reversal is too negligible to justify the delay and expense incident to an appeal and the consequent burden on hardpressed appellate courts.
 Donlon Industries, Inc. v. Forte, 402 F.2d 935, 937 (2d Cir.1968).
 
 
 [9]
 In Durkin v. Mason & Dixon Lines, 202 F.2d 425 (6th Cir.1953), this court held that appellants should have taken an appeal from an order denying liability even though there was no final judgment in the case. This holding was criticized in 15 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE & PROCEDURE Sec. 3910 (1976). But see Citibank v. Data Lease Fin. Corp., 645 F.2d 333 (5th Cir.1981) (holding that the failure to appeal from a sale order in a forfeiture proceeding foreclosed a later challenge on a final appeal)